

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

MEMO ENDORSED

April 28, 2023

The Application is granted.

SO ORDERED:

*[signature]*

Paul G. Gardephe, U.S.D.J.

Dated: April 28, 2023

**BY ECF**
The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:    *Securities and Exchange Commission v. Ho Wan Kwok et al.*, 23 Civ. 2200 (PGG)

Dear Judge Gardephe:

Pursuant to Your Honor's Individual Rules of Practice, the Government respectfully submits this letter seeking to intervene in the above-captioned case (the "SEC Civil Action") in order to seek a complete stay of this matter until the completion of the trial or other disposition in a parallel criminal case, *United States v. Ho Wan Kwok et al.*, S1 23 Cr. 118 (AT) (the "Criminal Case"). The Criminal Case arises from the same operative facts as this proceeding. Defendants Ho Wan Kwok and G Club Operations LLC, and Relief Defendant Mei Guo, consent to a complete stay of the SEC Civil Action,[1] and the SEC takes no position. An initial conference in this matter is currently set to take place on June 15, 2023 at 11:00 a.m.

If this case were to proceed, there would be a risk of significant interference with the Criminal Case. A complete stay would prejudice no party that has appeared in the SEC Civil Action; would prevent the circumvention of important statutory limitations on criminal discovery; and would preserve the Court's resources, because many of the issues presented by the SEC Civil Action may be resolved in the Criminal Case. In these and similar circumstances, courts in this Circuit frequently grant stays of parallel civil proceedings. *See, e.g., S.E.C. v. El-Khouri*, No. 19 Civ. 9744 (LAP), 2021 WL 601652 (S.D.N.Y. Jan. 26, 2021); *S.E.C. v. Carroll*, No. 19 Civ. 7199 (AT), 2020 WL 1272287 (S.D.N.Y. Mar. 17, 2020); *SEC v. Wey*, 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016); *SEC v. Durante et al.*, 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016); *SEC v. Shkreli, et al.*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at \*2-7 (E.D.N.Y. Mar. 22, 2016); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at \*3 (S.D.N.Y. Nov. 9, 2012).

---

[1] Defendant Kin Ming Je (a/k/a "William Je") has not yet appeared in this case; counsel for Je advised that Je takes no position on the Government's request. Defendant Mountains of Spices LLC (d/b/a "New York Farm") would oppose a stay on discovery, because it indicated that it intends to move to "sever" itself as a defendant, but it noted that—should the Court be inclined to issue a stay—Mountains of Spices would request a complete stay. Relief Defendants Qiang Guo (a/k/a "Mileson Guo"), Hing Chi Ngok, and Sin Ting Rong have not yet appeared in this case.

## Background

The parallel Criminal Case arises out of the same underlying events as this action. On March 15, 2023, the original Indictment in the Criminal Case was unsealed, charging Ho Wan Kwok and Kin Ming Je with, *inter alia*, conspiracy to commit wire fraud, bank fraud, and money laundering; wire fraud; securities fraud; and money laundering; arising from their operation of a scheme to defraud thousands of victims of more than $1 billion using a series of complex fraudulent businesses and fictitious investment opportunities that connected dozens of interrelated entities controlled by Kwok. Kwok was arrested by the FBI on March 15, 2023; Je remains at large and is believed to be in the United Arab Emirates. Also on March 15, 2023, the SEC filed the SEC Civil Action against Kwok and Je (among others).

As alleged in both the Criminal Case and the SEC Civil Action, from at least in or about April 2020 through March 2023, Kwok and Je engaged in scheme to defraud investors in the United States and throughout the world through fraudulent investment opportunities involving interrelated entities, which allowed Kwok, Je, and their co-conspirators to solicit, launder, and misappropriate victim funds. (S1 23 Cr. 118 (AT), Dkt. 19 ("Indict.") ¶¶ 1-5; 23 Civ. 2200 (PGG), Dkt. 1 ("Compl.") ¶¶ 1, 2). Both the Criminal Case and the SEC Civil Action allege the following:

- Kwok and Je launched an unregistered offering of common stock in a media company that Kwok founded called GTV Media Group, Inc. ("GTV"), which raised approximately $452 million. (Indict. ¶¶ 10, 13; Compl. ¶¶ 3, 54.) Both cases further allege that Kwok and Je claimed that the GTV private placement funds would be used for GTV's operations and business development, but that Kwok and Je instead misappropriated the investor funds, including through a $100 million transfer for the benefit of a company owned by Qiang Guo. (Indict. ¶¶ 13, 32; Compl. ¶¶ 3, 40-41, 45-46, 48, 56.)

- Kwok solicited further investments in GTV common stock through a convertible loan program operated by the so-called Himalaya Farm Alliance, a collective comprised of informal groups of Chinese expatriates purportedly dedicated to advancing the Chinese pro-democracy movement. (Indict. ¶ 14; Compl. ¶ 78.) Both cases further allege that Kwok and Je misappropriated a substantial portion of the more than $150 million raised through the convertible loan program for their and their families' benefit. (Indict. ¶ 14; Compl. ¶¶ 83, 86-93.)

- Kwok solicited investment in a purported membership concierge service called G|CLUBS (or G Club Operations LLC) and that Kwok represented that purchasing a G|CLUBS membership would entitle the purchaser to shares of GTV or G|Fashion stock. (Indict. ¶ 15; Compl. ¶¶ 94-96, 134.) Both cases further allege that G Club Operations LLC sold at least $250 million in G|CLUBS memberships to investors, much of which Kwok misappropriated for the purchase of, among other item, luxury automobiles and a $26.5 million mansion in Mahwah, New Jersey for the benefit of Kwok and his family. (Indict. ¶¶ 15-16; Compl. ¶¶ 98, 104.)

- Kwok made false and misleading statements to investors regarding GTV's valuation and the trading price of GTV stock. (Indict. ¶¶ 14; Compl. ¶¶ 4, 5, 74, 94.)

- Kwok and Je solicited investment in fraudulent cryptocurrency through the Himalaya Exchange, a purported cryptocurrency "ecosystem" that offered a purported trading coin (Himalaya Coin, or HCN) and a purported stablecoin (Himalaya Dollar, or HDO). (Indict. ¶¶ 17-21; Compl. ¶¶ 107-113.) Both cases further allege that Kwok and Je fraudulently obtained more than $260 million in investor funds through the Himalaya Exchange. (Indict. ¶ 17; Compl. ¶ 127.)

## Legal Standards

Rule 24 of the Federal Rules of Civil Procedure ("FRCP") provides for the intervention of parties in civil lawsuits either by right or by permission of the court. "[C]ourts in this Circuit have routinely allowed federal or state prosecutors to intervene in civil litigation in order to seek a stay of discovery." *SEC v. Treadway*, No. 04 Civ. 3464 (VM), 2005 WL 713826, at *2 (S.D.N.Y. Mar. 30, 2005).

This Court has the inherent power to stay a civil proceeding in the interests of justice pending the completion of the parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In evaluating whether to grant such a stay, courts in this Circuit consider: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest. *Treadway*, 2005 WL 713826, at *2-*3 (quoting *In re Worldcom, Inc. Secs. Litig.*, 2002 WL 31729501, at *4 (S.D.N.Y. Dec. 5, 2002)); *see also Volmar Distrib., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). "Balancing these factors is a case-by-case determination." *Volmar Distrib.*, 152 F.R.D. at 39. Application of each of these factors here weighs in favor of the stay sought by the Government, with defendant Kwok's consent.

## Argument

The Government should be permitted to intervene under FRCP 24(b) because the Criminal Case involves claims and defenses that share common questions of law and fact with this case. Given the effect that this civil proceeding would have on the Criminal Case and the similarity of claims and facts between the parallel proceedings, the Government respectfully submits that its application would satisfy both the standard for intervention as of right under Fed. R. Civ. P. 24(a)(2) and permissive intervention under Fed. R. Civ. P. 24(b)(2).

The Court should also grant the motion seeking to stay discovery in this case, for the reasons outlined below.

1. The Extent of Overlap

The Criminal Case and the SEC Civil Action involve nearly identical facts and issues, weighing heavily in favor of a stay. "Courts have consistently recognized [the overlap of issues] as a particularly significant factor." *Shkreli*, 2016 WL 1122029, at *4. *See, e.g., Volmar Distrib.*, 152 F.R.D. at 39; *Parker v. Dawson*, 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same). Here, as described above, the Criminal Case and this case involve the same scheme involving the same entities (GTV, the Himalaya Farm Alliance convertible loan program, G|CLUBS, and the Himalaya Exchange), and similar facts, witnesses, and issues.

2. The Status of the Criminal Case

The status of the criminal case also weighs in favor of a stay. The defendant Kwok has already been indicted and the Government will produce voluminous Rule 16 discovery upon entry of a protective order. "The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm., Inc. Secs. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990). As the Court explained in *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*: "A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved." 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *see SEC v. Tuzman*, No. 15 Civ. 7057 (AJN) (S.D.N.Y. Mar. 1, 2016), Dkt. No. 43 at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicting that the criminal case may not be resolved expeditiously); *Shkreli*, 2016 WL 1122029, at *4.

3. The Plaintiff's Interests

The SEC has indicated that it takes no position on a stay. Therefore, there can be no argument that there would be prejudice to the plaintiff by staying this action. *See Shkreli*, 2016 WL 1122029, at *5 (citing cases).

4. The Defendants' Interests

As noted above, Kwok and G Club Operations consent through counsel to a complete stay of this action. Moreover, a stay will prevent Kwok (who is a defendant in the Criminal Case) from having to choose between asserting his Fifth Amendment rights during civil discovery and thereby being prejudiced in the SEC Civil Action or asserting those rights and thereby being prejudiced in the Criminal Case. *See Shkreli*, 2016 WL 1122029, at *3 n. 3 ("[C]riminal defendants frequently seek stays in parallel civil enforcement proceedings, often due to an adverse inference that can arise from a party's invocation of the Fifth Amendment privilege against self-incrimination."). Accordingly, the defendants will not be prejudiced by a stay.

5. The Court's Interests

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the Criminal Case, thereby simplifying and streamlining the SEC Civil Action. *See SEC v. Abraaj Inv. Mgmt. Ltd.*, No. 19 Civ. 3244 (AJN), 2019 WL 6498282, at

*3 (S.D.N.Y. Dec. 3, 2019) ("A stay of the civil action while the criminal case moves forward would avoid a duplication of efforts and a waste of judicial time and resources.") (internal quotation and citation omitted); *SEC v. Contorinis*, 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *SEC v. One or More Unknown Purchasers of Secs. of Global Indus.*, 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome.").

6. <u>The Public Interest</u>

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the restrictions that pertain to criminal discovery. Courts recognize this as an important factor that weighs in favor of a stay of parallel civil proceedings. *See, e.g., SEC v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in context of request for civil stay of discovery due to pending criminal investigation, "[t]he principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases"); *Phillip Morris Inc. v. Heinrich*, 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (without a stay, defendants "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); *SEC v. Town of Ramapo*, No. 16 Civ. 2779 (CS) (S.D.N.Y. June 30, 2016), Dkt. 90 at 38 ("There's a public interest in criminal defendants not gaining discovery via a civil case that they wouldn't otherwise have because of the obvious risk that evidence or testimony could be tailored . . . . Congress passed the Jencks Act and it passed Section 3500 because it was concerned generally about that problem in every case. And the rationale behind the Jencks Act would be undermined if criminal defendants would use the civil process to gain information to which they would not otherwise be entitled.").

\*　　　　\*　　　　\*

For the foregoing reasons, the Government should be permitted to intervene in this case, and the Court should stay this proceeding until the resolution of the Criminal Case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Juliana N. Murray
Ryan B. Finkel
Micah F. Fergenson
Assistant United States Attorneys
(212) 637-2314 / 6612 / 2190

Cc:    All Counsel of Record (by ECF)