UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>　　　　　　　　　　　　　　　　　　Plaintiff,<br><br><br>　　　　　　　-against-<br><br>HO WAN KWOK (A/K/A MILES GUO, MILES<br>KWOK, WENGUI GUO AND BROTHER SEVEN),<br>KIN MING JE (A/K/A WILLIAM JE),<br>MOUNTAINS OF SPICES LLC (D/B/A NEW<br>YORK FARM), and G CLUB OPERATIONS LLC,<br>　　　　　　　　　　　　　　　　Defendants,<br><br>　　　　　　　-and-<br><br>MEI GUO, QIANG GUO (A/K/A MILESON GUO),<br>HING CHI NGOK, and SIN TING RONG,<br>　　　　　　　　　　　　　　Relief Defendants. | 23 Civ. 2200 (PGG) |

---

# CERTIFICATE OF SERVICE

---

I,　　　　Jonathan Wood　　　　　　, process server of Tremark Associates Ltd, Joshua Chambers, 332 York Road, Leeds, England, LS9 9DN, instructed by Stephenson Harwood LLP, make this Certificate of Service and WILL SAY as follows:-

　　1.　That Qiang Guo's (also known as Mileson Guo) last known address is Apartment 6, 5 Princes Gate, SW7 1QJ, London, United Kingdom ("**5 Princes Gate**").

　　2.　That I did on　Thursday 19th December 2024 at 14:20　　hours attend at 5 Princes Gate where I left the below mentioned documents at this address:

　　　　　i.　Signed Summons to Qiang Guo dated December 17, 2024
　　　　　ii.　Complaint dated March 15, 2023
　　　　　iii.　Electronic Case Filing Rules & Instructions, July 24, 2023 Edition
　　　　　iv.　Judge Gardephe's Individual Rules of Practice for Civil Cases, last
　　　　　　　updated April 2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                              Plaintiff,<br><br><br>                        -against-<br><br><br>HO WAN KWOK (A/K/A MILES GUO, MILES<br>KWOK, WENGUI GUO AND BROTHER SEVEN),<br>KIN MING JE (A/K/A WILLIAM JE),<br>MOUNTAINS OF SPICES LLC (D/B/A NEW<br>YORK FARM), and G CLUB OPERATIONS LLC,<br><br>                                              Defendants,<br><br><br>                        -and-<br><br><br>MEI GUO, QIANG GUO (A/K/A MILESON GUO),<br>HING CHI NGOK, and SIN TING RONG,<br><br>                                    Relief Defendants. | 23 Civ. 2200 (PGG) |

3.   True copies of the said documents listed above at 'i' to 'iv' so served by me are now
     produced to me and exhibited hereto marked 'A'.


**Statement of truth**

I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.


Full name ..........................Jonathan Wood.....................................................

Signed...........................................................................................

Dated..................O.1./0.3/Z5...........................

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>                                    **Plaintiff,**<br><br><br>                    -against-<br><br>HO WAN KWOK (A/K/A MILES GUO, MILES<br>KWOK, WENGUI GUO AND BROTHER SEVEN),<br>KIN MING JE (A/K/A WILLIAM JE),<br>MOUNTAINS OF SPICES LLC (D/B/A NEW<br>YORK FARM), and G CLUB OPERATIONS LLC,<br>                                    **Defendants,**<br><br>                    -and-<br><br>MEI GUO, QIANG GUO (A/K/A MILESON GUO),<br>HING CHI NGOK, and SIN TING RONG,<br>                                    **Relief Defendants.** | 23 Civ. 2200 (PGG) |

## This is the exhibit 'A' referred to in the Certificate of Service of Qiang Guo

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York  ▼

| | | |
|---|---|---|
| Securities and Exchange Commission | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Civil Action No. 1:23-cv-02200 (PGG) |
| v. | ) | |
| Ho Wan Kwok, et al. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Qiang Guo (a/k/a Mileson Guo)
5 Princes Gate, Apt. 6
London
SW7 1QJ
United Kingdom

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel Loss
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  12/17/2024                                    s/ G. Pisarczyk
_____                    _____
                                                              *Signature of Clerk or Deputy Clerk*

**ANTONIA M. APPS**
**REGIONAL DIRECTOR**
**Thomas P. Smith, Jr.**
**Sandeep Satwalekar**
**Daniel Loss**
**William Conway**
**Amanda Rios**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street, Suite 20-100**
**New York, New York 10004-2616**
**(212) 336-5571 (Loss)**
**LossD@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| Plaintiff, | **23 Civ. 2200 (    )** |
| -against- | |
| **HO WAN KWOK (A/K/A MILES GUO, MILES KWOK, WENGUI GUO AND BROTHER SEVEN), KIN MING JE (A/K/A WILLIAM JE), MOUNTAINS OF SPICES LLC (D/B/A NEW YORK FARM), and G CLUB OPERATIONS LLC,** | **JURY TRIAL DEMANDED** |
| Defendants, | |
| -and- | |
| **MEI GUO, QIANG GUO (A/K/A MILESON GUO), HING CHI NGOK, and SIN TING RONG,** | |
| Relief Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendants Ho Wan Kwok (a/k/a Miles Guo, Miles Kwok, Wengui Guo, and Brother Seven)

("Guo"), Kin Ming Je (a/k/a William Je) ("Je"), Mountains of Spices LLC (d/b/a New York

Farm) ("Mountains of Spices"), and G Club Operations LLC ("G Club Operations")

(collectively, "Defendants") and Relief Defendants Mei Guo, Qiang Guo (a/k/a Mileson Guo),

Hing Chi Ngok ("Ngok"), and Sin Ting Rong ("Rong") (collectively, "Relief Defendants"),

alleges as follows:

## SUMMARY

1.       This action concerns multiple offering frauds orchestrated by Guo, an exiled

Chinese businessman living in the United States who targeted retail investors through online and

social media posts and videos.  Since in or about April 2020, Guo has conducted fraudulent

securities offerings (the "Subject Offerings") that have collectively raised at least hundreds of

millions of dollars from investors in the United States and around the world.  Unbeknownst to

those investors, Guo and his financial adviser, Je, misappropriated a large portion of the funds

raised from certain of the Subject Offerings in order to enrich themselves and their family

members, including the Relief Defendants.

2.       Guo pitched three unregistered securities offerings to investors as a means of

obtaining shares in GTV Media Group, Inc. ("GTV"), a media company that Guo founded, and a

fourth offering as a means to obtain a crypto asset security called "H-Coin" that he falsely

claimed was backed by gold reserves.

3.       First, from in or about April 2020 to June 2020, Guo and Je launched an

unregistered offering of GTV common stock (the "GTV Private Placement"), which raised

approximately $452 million.  According to the private placement memorandum (the "GTV

PPM"), GTV's mission was "to build the most popular and safest social media and transaction

platform independent of the Chinese government's censorship and monitoring, allowing the

people of China and the world to realize the freedom of speech and trade."  Guo and Je claimed

that investor funds obtained pursuant to the GTV Private Placement would be used for GTV's operations and business development.  In fact, however, just days after the conclusion of the GTV Private Placement, Guo and Je misappropriated $100 million of investor money for the benefit of a company solely owned by Guo's son, Qiang Guo.

4.      Second, following the GTV Private Placement, from in or about July 2020 through March 2021, Guo solicited investments in an at least $150 million unregistered offering of convertible loans that could be exchanged for GTV common stock (the "Convertible Loan Offering").  Before and during the Convertible Loan Offering, Guo made material misrepresentations relating to GTV's valuation and the price at which GTV stock traded, falsely claiming, for example, that GTV was worth as much as $20 billion and that the stock was trading at $18 per share, mere months after the GTV Private Placement offered the stock at just $1 per share.  These misrepresentations were important to investors' decisions to purchase GTV's convertible loans.  Guo also misappropriated at least tens of millions of dollars raised from the Convertible Loan Offering.

5.      Third, from in or about October 2020 through December 2021, Guo and G Club Operations sold memberships in a concierge service called G-Clubs (a/k/a G-Club and G|CLUBS) pursuant to an unregistered offering (the "G-Clubs Offering").  In connection with the G-Clubs Offering, Guo and G Club Operations falsely represented that purchasers of G-Clubs memberships would receive shares of GTV and/or G Fashion LLC ("G-Fashion"), a related company that held itself out as a fashion retailer.  In fact, contrary to these representations, numerous G-Clubs members did not receive stock in either GTV or G-Fashion as promised.  As with the Convertible Loan Offering, Guo's misrepresentations relating to GTV's valuation and the trading price of its stock were important to investors' decisions to

participate in the G-Clubs Offering.  Out of at least $255 million raised pursuant to the G-Clubs

Offering, Guo and members of his family, including Mei Guo, Qiang Guo, and Ngok, received

approximately $51 million in misappropriated investor funds for their personal benefit.

6.     Finally, beginning in at least approximately October 2021, Guo made material

misrepresentations to prospective purchasers of a crypto asset security called H-Coin (a/k/a

Himalaya Coin or HCN).  For example, Guo falsely claimed that 20% of H-Coin's value was

held in gold reserves.  Additionally, Guo falsely stated that he would compensate investors for

losses related to their H-Coin purchases.  From approximately May 2021 through October 2022,

thousands of investors contributed an aggregate of approximately at least $500 million for the

purchase of H-Coin and a purported companion stablecoin, H-Dollar.  Most of these investments

occurred after Guo made the misrepresentations discussed herein.

## VIOLATIONS

7.     By virtue of the foregoing conduct and as alleged further herein, Defendants Guo

and Je have committed securities fraud and Defendants Guo, G Club Operations, and Mountains

of Spices offered and sold unregistered securities.  Defendant Je also aided and abetted some of

Guo's securities fraud violations.

8.     Defendants Guo, Mountains of Spices, and G Club Operations violated Sections

5(a) and (c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)].

9.     Defendants Guo and Je violated Sections 17(a)(1) and 17(a)(3) of the Securities

Act [15 U.S.C. §§77q(a)(1) and 77q(a)(3)] and Section 10(b) of the Securities Exchange Act of

1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17

C.F.R. §§ 240.10b-5(a) and (c)].

10.    Defendant Guo further violated Section 17(a)(2) of the Securities Act [15 U.S.C.

§ 77q(a)(2)] and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

11.     Pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)] and Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Je aided and abetted Guo's violations of Section 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

12.     Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

13.     The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

14.     The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws and rules this Complaint alleges they have violated; (b) ordering Defendants to disgorge all ill-gotten gains they received as a result of the violations alleged here and to pay prejudgment interest thereon pursuant to Sections 21(d)(3), 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5) and 78u(d)(7)]; (c) ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Guo from participating in the offer or sale of securities, including crypto asset securities, except for transactions in his own personal account, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)]; (e) permanently prohibiting Guo and Je

from serving as an officer or director of any company that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; (f) ordering Mei Guo, Qiang Guo, Ngok, and Rong to pay, with prejudgment interest, all ill-gotten gains by which they were unjustly enriched, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5) and 78u(d)(7)]; and (g) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

16.     Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

17.     Venue lies in this District under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Defendants may be found in, are inhabitants of, or transact business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including the solicitation of investors in the Subject Offerings and the receipt and diversion of investor funds.  For example, GTV was headquartered in this District and Guo resided in this District during some of the relevant conduct.

## DEFENDANTS

18.     **Guo**, age 54, is a Hong Kong citizen living in New York, New York and

6

Greenwich, Connecticut.  At all relevant times, Guo controlled GTV, Saraca Media Group, Inc. ("Saraca"), G Club Operations, and G-Fashion.  Guo is not registered with the Commission in any capacity.  Guo asserted his Fifth Amendment right against self-incrimination in response to being subpoenaed for documents and testimony in the Commission staff's investigation preceding the filing of this action.

19.     **Je**, age 55, is a dual Hong Kong and United Kingdom citizen currently living in London, United Kingdom.  Je is a long-time investment banker and financial adviser to Guo and his family.  Je served as GTV's adviser for the GTV Private Placement and also owns and controls various companies that received investor funds raised pursuant to the Convertible Loan Offering and G-Clubs Offering.  Je is also the owner of an entity that purported to operate the so-called "Himalaya Exchange," through which H-Coin was offered and sold to the investing public.

20.     **G Club Operations**, formed in 2020, is a Puerto Rico company with its principal places of business in Puerto Rico and New York, New York.  G Club Operations operates the G-Clubs membership program and directly and indirectly received at least $255 million in investor proceeds during the G-Clubs Offering.  G Club Operations is not registered with the Commission in any capacity.

21.     **Mountains of Spices**, formed in 2019, is a New York company with its principal place of business in Great Neck, New York.  Mountains of Spices directly and indirectly collected over $24.6 million in investor funds pursuant to the Convertible Loan Offering.  Mountains of Spices is not registered with the Commission in any capacity.

### RELIEF DEFENDANTS

22.     **Mei Guo**, age 34, is a Hong Kong citizen living in New York, New York and Greenwich, Connecticut.  Mei Guo is Guo's daughter.  In February 2021, a corporate entity

solely owned by Mei Guo ("Company 1") received approximately $18 million in proceeds from the Convertible Loan Offering.  In October 2021, Company 1 transferred $400,000 of such proceeds to Mei Guo's personal bank account.  In addition, between March and May 2021, a company that is wholly-owned by Qiang Guo ("Company 2") transferred a total of $650,000 in Convertible Loan Offering proceeds to Mei Guo's personal bank account.  Mei Guo and Company 1 had no legitimate claim to the funds they received that are traceable to the Convertible Loan Offering.

23.     **Qiang Guo**, age 36, is a Hong Kong citizen residing in London, United Kingdom. Qiang Guo is Guo's son.  Qiang Guo is the beneficial owner of Saraca, which used at least $100 million of GTV Private Placement investor funds for its own benefit, contrary to the disclosures to GTV Private Placement investors.  Qiang Guo is the sole owner of Company 2, which received approximately $27 million in Convertible Loan Offering investor funds.  In May and June 2021, Company 2 transferred $20 million of these investor funds to a bank account based in Switzerland belonging to Qiang Guo.  In June 2021, Qiang Guo used approximately $3.5 million in G-Clubs Offering investor funds to purchase a Ferrari race car.  Qiang Guo, Saraca, and Company 2 had no legitimate claim to these investor funds they received.

24.     **Ngok**, age 54, is a Chinese citizen residing in Greenwich, Connecticut.  Ngok is Guo's wife and is the sole owner of a corporate entity ("Company 3") that received approximately $5 million in Convertible Loan Offering investor funds in October 2020. Company 3 is also the 100% owner of a mansion in Greenwich, Connecticut, which was one of Guo's residences during the time period of the Subject Offerings.  Ngok and Company 3 had no legitimate claim to the Convertible Loan Offering investor funds they received.

25.     **Rong**, age 52, is a Hong Kong citizen residing in London, United Kingdom.

Rong is Je's wife.  Between about January 2021 and February 2021, Je transferred approximately $3 million in Convertible Loan Offering proceeds from one of his companies to Rong's personal bank account.  Rong had no legitimate claim to the investor funds she received.

### OTHER RELEVANT ENTITIES

26.  **G Fashion LLC (a/k/a G|FASHION)** ("G-Fashion"), formed in 2020, is a Puerto Rico company with its principal place of business in New York, New York.  According to the company's website, G-Fashion owns and operates "a global luxury brand, featuring bespoke collections by the world's top designers" and "serves as the fashion counterpart to G Clubs, and will provide exclusive benefits to G Clubs members."

27.  **GNews Media Group, Inc.** ("GNews"), formed in 2019, is a Delaware corporation with its principal place of business in Puerto Rico.  GNews is 100% owned by Saraca, a Delaware company owned by Guo's son, Qiang Guo.  According to the GTV PPM, Guo and Saraca operate GNews.  GNews' website describes GNews as "one of the world's leading social media platforms" and features Guo's videos and related content, including sections of the website entitled "Miles Guo" and "Miles' Text."  The GNews website also contains links to the websites for G-Clubs, G-Fashion, and the so-called Himalaya Exchange, as well as articles that summarize H-Coin's purported recent trading activity.

28.  **GTV**, formed in April 2020, is a Delaware corporation with its principal place of business in New York, New York.  GTV owned and operated a news-focused social media website and mobile application.  In September 2021, GTV agreed to settle Commission charges that it violated Sections 5(a) and 5(c) of the Securities Act by conducting the GTV Private Placement. GTV's website was taken down in March 2022 and the company has been inactive and insolvent since at least that time.

29.     **Saraca** formed in May 2018, is a Delaware corporation with its principal place of business in New York, New York.  Saraca is the parent company of GTV and is solely owned by Qiang Guo.  In September 2021, Saraca agreed to settle Commission charges that it violated Sections 5(a) and 5(c) of the Securities Act in connection with the GTV Private Placement.

## FACTS

### I.     Background on Guo

30.     Guo is an exiled Chinese businessman who has been in the United States since in or around 2014.  In 2017, Guo applied for political asylum in the United States and that application remains pending.

31.     The GTV PPM, dated April 2020, describes Guo as a successful businessman and a billionaire.

32.     On or about February 15, 2022, Guo filed for Chapter 11 bankruptcy protection, claiming assets valued between $50,000 and $100,000 and liabilities valued between $100 million and $500 million.

33.     Following his departure from China, Guo became a vocal critic of the Chinese government and developed a large social media following among the Chinese diaspora on YouTube and Gettr.

### II.     The GTV Private Placement

34.     On or about April 17, 2020, Guo established GTV to own and operate a news-focused social media platform.

35.     At the time of its formation, GTV was a wholly-owned subsidiary of Saraca, which has at all relevant times been beneficially owned by Guo's son, Qiang Guo.

36.     Days after the creation of GTV, on April 21, 2020, Guo announced via a video

posted on his YouTube channel (the "Launch Video") the unregistered offering of between 20

million and 200 million newly-issued shares of GTV common stock at a price of $1 per share

(*i.e.,* the GTV Private Placement).

37.     The Launch Video, which has had over 4,000 views, described GTV as a social

media platform like WeChat in China.

38.     The Launch Video further claimed that GTV had the potential to "go beyond"

WeChat and other successful platforms and "become a world comprehensive service platform

which is decentralized serving investors and having the most advanced technologies including

modern finance and modern block chain." [1]

39.     The Launch Video provided Guo's mobile phone number for potential investors

to use for inquiries about the offering.

40.     In addition to participating in the Launch Video, Guo directed the preparation of

the GTV PPM.  Although others contributed to its preparation, Guo exercised authority over the

GTV PPM's contents.

41.     Je, who served as GTV's adviser for the GTV Private Placement, also edited the

GTV PPM and other offering documents such as the "Investment Procedure Guidelines," an

instructional step-by-step guide that was sent to potential investors along with the GTV PPM.

42.     The GTV PPM stated that GTV's mission was to "build the most popular and

safest social media and transaction platform independent of the Chinese government's

censorship and monitoring, allowing the people of China and the world to realize the freedom of

speech and trade."

43.     According to the GTV PPM, GTV's social media platform would be "the first

---

[1]     Certain statements attributed herein to Guo have been translated from Mandarin to English.

ever platform which will combine the power of citizen journalism and social news with state-of-the-art technology, big data, artificial intelligence, block-chain technology and real-time interactive communication" and planned to be "the only uncensored and independent bridge between China and the Western world."

44.     The GTV PPM described Guo as a "billionaire" as well as GTV's "sponsor and adviser."

45.     The GTV PPM stated that GTV Media planned to use the proceeds from the GTV Private Placement to "expand and strengthen the business."

46.     The GTV PPM also contained the table depicted below representing the specific "contemplated" uses of investor proceeds set forth therein:

| Description | Percentage of Proceeds |
| --- | --- |
| Acquisition of companies to strengthen and grow GTV | Approximate 70% |
| Upgrade of GTV technology and security | Approximate 10% |
| Marketing | Approximate 8% |
| Working capital | Approximate 7% |
| Other | Approximate 5% |
| Total | 100% |

47.     The GTV PPM noted that GTV's management would have "considerable discretion over the use of proceeds."

48.     The GTV PPM did not disclose a plan to use any portion of the proceeds from the GTV Private Placement for the benefit of Saraca or the personal benefit of Guo or his family members.

49.     The GTV PPM provided Guo's mobile phone number for potential investors to use for inquiries about the offering.

50.     The GTV Private Placement was not made pursuant to an effective registration statement filed with the Commission.

51.     Guo solicited the general public for the GTV Private Placement by posting videos on his publicly-accessible pages on social media platforms, such as YouTube, as well as GTV's and GNews's respective websites, www.gtv.org and www.gnews.org.

52.     In addition, Guo personally disseminated information about the GTV Private Placement to hundreds of prospective investors via WhatsApp messages.  These messages included links to both the Launch Video and a Google Drive folder that contained copies of the GTV PPM, Investment Procedure Guidelines, and other offering materials, none of which was password protected or contained any restriction on who could view them or any limitations on their ability to be shared.

53.     Guo did not perform adequate due diligence to ensure that the persons solicited during the GTV Private Placement were accredited investors.

54.     The GTV Private Placement closed on June 2, 2020 and, in total, raised approximately $452 million from more than 1,000 investors, including U.S. investors.

55.     Pursuant to the GTV Private Placement's investment instructions that were set forth in the Investment Procedure Guidelines – the contents of which were known to Guo and Je – the vast majority of the offering proceeds were deposited directly into Saraca's bank accounts.

56.     Three days after the close of the GTV Private Placement, on or about June 5, 2020, Saraca invested $100 million (approximately 22%) of the proceeds from the GTV Private Placement in a hedge fund ("Hedge Fund A").  Saraca made this investment on its own behalf

and, by extension, for the benefit of Qiang Guo.

57.     Hedge Fund A's investment strategy involved taking positions in various Asian currencies, particularly the Hong Kong dollar, versus certain developed market currencies through foreign currency forward and option contracts.

58.     Guo and Je made the decision for Saraca to invest GTV Private Placement investor funds with Hedge Fund A and negotiated the terms of the investment.

59.     Guo and Je had expressed investment interest to Hedge Fund A's portfolio manager on multiple occasions since 2018.

60.     On or about May 26, 2020, Je instructed Hedge Fund A to have $100 million invested in Saraca's name and provided Hedge Fund A with the required documentation for the investment, including Saraca's "KYC" information and executed subscription agreements.

61.     On June 4, 2020, Je sent an email to Hedge Fund A stating "we will wire the funds tomorrow."

62.     At the time of this investment, Guo and Je knew or recklessly disregarded that Saraca's investment was made using investor funds from the GTV Private Placement and that the investment was contrary to the use of funds provisions in the GTV PPM.

63.     Guo and Je also concealed Saraca's use of GTV Private Placement investor funds for its Hedge Fund A investment from GTV's board of directors and officers.

64.     For example, Je attended GTV's first board meeting on July 1, 2020 and did not inform the GTV board that $100 million of the GTV Private Placement proceeds had been invested for Saraca's benefit in Hedge Fund A even though the GTV Private Placement was one of the main topics of discussion at the meeting.

65.     As a result of investment losses sustained by Hedge Fund A, Saraca lost

approximately $30 million of its $100 million investment with Hedge Fund A by the time it liquidated its investment in October 2021.[2]

### III.    Guo Misrepresents the Valuation of GTV and G-Fashion

66.    From at least June through August 2020, Guo released additional videos on YouTube and the GTV website discussing GTV, as well as a new enterprise, G-Fashion.

67.    On its website, G-Fashion purports to be "a global luxury brand, featuring bespoke collections by the world's top designers" and "serves as the fashion counterpart to G|CLUBS, and will provide exclusive benefits to G|CLUBS members."

68.    On several occasions, in these videos, Guo made materially false and misleading statements concerning the valuation of GTV and G-Fashion.

69.    For example, in a video publicly disseminated on June 2, 2020, Guo stated:

> Given the tremendous demand for GTV shares and the good capital position of GTV going forward, my lawyers and financial experts mutually agree that a $2 billion valuation is probably too low and that the company is probably closer to $10 billion given the tremendous demand for GTV shares.

70.    As Guo knew or recklessly disregarded, he had not received advice from lawyers and financial experts supporting a valuation of close to $10 billion, and such a valuation was inaccurate.

71.    Guo further asserted his Fifth Amendment right against self-incrimination in response to an investigative subpoena for testimony relating to his statements about GTV's valuation.

72.    On or about June 17, 2020, Guo released another video to the general public. As

---

[2]    Pursuant to a September 13, 2021 Order Instituting Cease-and-Desist Proceedings that was issued in connection with an SEC proceeding (*In the Matter of GTV Media Group, Inc. et al.* (File No. 3-02537)), Saraca transferred the remaining approximately $70 million from its Hedge Fund A investment to a Fair Fund where it will be distributed to GTV Private Placement investors.

to the valuation of GTV, he stated:

> Just now, two or three hours ago, a comrade sold 10 thousand [GTV] shares, 10 thousand shares, and a deal has been concluded for $18 a share, $18 per share. But our investment committee was not happy and wanted to buy them all back for $20.

73. As Guo knew or recklessly disregarded, no such transaction had taken place, and GTV, which did not have an investment committee, had no plans to repurchase GTV shares from GTV Private Placement investors at $20 per share.

74. On or about August 2, 2020, Guo issued a public video claiming that "the market value of GTV stock [was] 20 billion dollars."

75. In the same video, Guo claimed that "[i]f G-Fashion goes public, it will be worth $100 billion for sure."

76. At the time he made these statements, Guo knew or recklessly disregarded that GTV was not worth close to $20 billion and that G-Fashion would not be worth $100 billion after going public.

## IV.    The Convertible Loan Offering

77. On or about July 22, 2020, during the timeframe in which he was making misrepresentations about GTV's valuation, Guo announced a new securities offering by the Himalaya Farm Alliance through which investors could obtain GTV stock (*i.e.,* the Convertible Loan Offering). Guo made this announcement in a publicly available video.

78. The Himalaya Farm Alliance was a collective comprised of informal groups of Chinese expatriates, with each such group known as a "Farm." The Himalaya Farm Alliance was purportedly dedicated to advancing the Chinese pro-democracy movement.

79. Farms were located in various cities both within and outside the United States, including New York City.

80.     In most cases, the Farms were associated with a corporate entity.  The so-called "New York Farm" was associated with Mountains of Spices.

81.     In the July 22, 2020 video announcing the Convertible Loan Offering, Guo explained that the Farms were offering convertible loans with a three-year term that, at maturity, would be convertible into one share of GTV stock for each dollar in principal and/or interest owed.

82.     The Convertible Loan Offering was not made pursuant to an effective registration statement filed with the Commission.

83.     From in or about August 2020 through March 2021, following Guo's false statements about GTV and its stock discussed above in Section III, the U.S.-based Farms raised at least $150 million from the general public in connection with the Convertible Loan Offering, including approximately $24.6 million raised by Mountains of Spices.

84.     Neither Guo nor the Farms, including Mountains of Spices, performed any due diligence in order to determine whether the investors in the Convertible Loan Offering were accredited investors.

85.     In connection with the Convertible Loan Offering, the Farms provided prospective investors with a "Loan Agreement" that represented that the investor's money would be used for a specific Farm's "general working capital purposes."

86.     In fact, however, Guo misappropriated a substantial portion of Convertible Loan Offering funds raised by the U.S.-based Farms, including Mountains of Spices.  Such funds were ultimately used for the benefit of Guo, Je, and members of their families.

87.     Over the course of the Convertible Loan Offering, through on or about April 20, 2021, Guo directed the Farms to transfer approximately $81 million of the Convertible Loan

Offering proceeds to an Abu Dhabi bank account in the name of a Hong Kong company owned and controlled by Je ("Company 4"). The investor funds in Company 4's account were commingled with other funds.

88. Between in or about August 2020 and April 2021, Guo directed the transfer of approximately $35 million of Convertible Loan Offering investor funds, including Mountains of Spices investor funds, from Company 4's account to Company 1's, Company 2's and Company 3's bank accounts, which were under the control of Relief Defendants Mei Guo, Qiang Guo, and Ngok, respectively. Specifically, Company 1, which was controlled by Mei Guo, received approximately $18 million; Company 2, which was controlled by Qiang Guo, received approximately $11 million; and Company 3, which was controlled by Ngok, received approximately $5 million.

89. In turn, from Company 1's and Company 2's bank accounts, among other things:

    a.    $20 million was transferred to a bank account belonging to Qiang Guo based in Switzerland, of which approximately $330,000 was used for the purchase of a plane;

    b.    $1 million was transferred to bank accounts in the name of Mei Guo;

    c.    Approximately $2.3 million was paid towards yacht servicing costs;

    d.    Approximately $600,000 was paid to luxury automobile, motorcycle and power sport dealerships;

    e.    Approximately $281,000 was paid to an aircraft manufacturer; and

    f.    Approximately $950,000 was paid to a private flight crew company.

90. Ngok, Mei Guo, and Qiang Guo did not have legitimate claims to the Convertible Loan Offering investor funds they received.

91.     Company 4 separately transferred an additional approximately $66.3 million, comprised largely of Convertible Loan Offering investor funds, to other accounts that were under the control of Je and Rong.

92.     These transfers included, among others, $7 million to Je's personal bank accounts and $3 million to Rong's personal bank account.

93.     Neither Je nor Rong had a legitimate claim to receive these Convertible Loan Offering investor funds.

**V.      The G-Clubs Offering**

94.     On or about June 20, 2020, after touting falsely inflated valuations for GTV and G-Fashion, Guo announced a new concierge service called G-Clubs and the sale of G-Clubs memberships (*i.e.*, the G-Clubs Offering).  Guo made the announcement via a video posted on the GTV website.

95.     Guo represented in the video that purchasing a G-Clubs membership would entitle the purchaser to shares of GTV or G-Fashion stock.

96.     In at least four subsequent videos, which appeared on publicly accessible pages on GTV's website and on YouTube between approximately July 22, 2020 and August 12, 2021, Guo repeated his representation that purchasers of G-Clubs memberships would receive shares of GTV stock and/or G-Fashion stock.

97.     G-Clubs launched in October 2020 and offered five tiers of memberships that ranged in cost from $10,000 to $50,000.  The membership benefits purportedly included "exclusive early access to [sic] latest fashion collections, including special member pricing on purchases, extended video blogging time and early access to select music."

98.     Between in or about October 2020 and December 2021, G Club Operations sold at least approximately $255 million in G-Clubs memberships to investors throughout the world,

19

including the United States.

99.     Some investors purchased multiple G-Clubs memberships or wired funds in excess of the cost of the highest G-Clubs membership tier of $50,000 in order to acquire a greater number of GTV or G-Fashion shares.

100.    The sale of GTV and G-Fashion stock through the G-Clubs Offering was not pursuant to an effective registration statement filed with the Commission.

101.    Guo solicited investors for the G-Clubs Offering through his numerous publicly-accessible videos on GTV's website and YouTube.

102.    Individuals who were interested in purchasing a G-Clubs membership were directed to fill out an application on G-Clubs' website.  The application lacked financial questions that would make it possible to evaluate whether the individual qualified as an accredited investor.

103.    G Club Operations reviewed and processed the membership applications, and G-Clubs Offering investors were directed to send their investment funds to G Club Operations' bank accounts.

104.    Guo knowingly or recklessly misappropriated at least approximately $51 million of $255 million in investor funds that were raised from the G-Clubs Offering as follows:

      a.   In June 2021, $3.5 million of the G-Clubs investor funds were used to purchase a Ferrari race car from a Beverly Hills-based Ferrari dealership for Qiang Guo;

      b.   In December 2021, $26.5 million of the G-Clubs Offering investor funds were used towards the purchase of a 50,000 square foot mansion in Mahwah, New Jersey intended for the use and benefit of Guo, Ngok, Mei Guo, and Qiang

Guo;

c.  Between December 2021 and March 2022, an additional $13 million of
G-Clubs Offering investor funds was used to pay for renovations to Guo's
Mahwah, New Jersey mansion, as well as various furniture and decorative
expenditures, such as $978,000 for Chinese and Persian rugs, a $62,000
television, a $59,000 watch storage box, a $53,000 fireplace log cradle holder,
and a $35,000 mattress; and

d.  Between in or about August 2021 and November 2021, G-Clubs Offering
investor funds were used to pay for various luxury items and services for Guo
and his family, including $2.7 million for a yacht and yacht-related expenses,
$2.9 million for a Bugatti automobile, $832,000 for a Lamborghini, and
approximately $1.5 million for other vehicles and racing-related expenses.

105.  Guo, Ngok, Mei Guo, and Qiang Guo did not have legitimate claims to receive
these G-Clubs Offering investor funds.

106.  To date, purchasers of G-Clubs memberships have not received GTV or
G-Fashion stock.

## VI.  The H-Coin Offering

107.  In or around April 2021, the so-called Himalaya Exchange announced an
upcoming initial offering of H-Coin, a new crypto asset security, and posted a "White Paper" for
H-Coin on its website.[3]

108.  The White Paper stated that the H-Coin Offering would involve the sale of 1

---

[3]      The April 2021 announcement also referenced the sale of "HCN Credits," which the Himalaya Exchange
website explained correspond to an investor's holding in H-Coin.  For purposes of this Complaint, all references to
"H-Coin" include HCN Credits.

billion H-Coins at a price of $.10 per coin and contained a graph depicting the potential for high investment returns.

109.    On or about September 24, 2021, the CEO of the Himalaya Exchange described H-Coin as an "investment coin" in a videotaped interview posted on GTV's website.

110.    On or around October 20, 2021, in a publicly-available online video, Guo discussed the upcoming launch of H-Coin and stated that he had "designed" H-Coins.  In subsequent publicly-available videos, including a video posted on Guo's GNews website on or about June 2, 2022, Guo touted the liquidity of H-Coin, which was purportedly traded on the "Himalaya Exchange."

111.    Additionally, in the October 20, 2021 video, Guo stated, in substance, that H-Coin "has 20% gold" and that "[n]o matter how much [H-Coin] raises, 20% will turn into gold."

112.    Guo also stated in the October 20, 2021 video that H-Coin would make money and that he would compensate investors for "100%" of investment losses attributable to H-Coin.

113.    On or around November 1, 2021, Guo announced via a publicly-available online video the official launch of H-Coin, along with a purported companion stablecoin, H-Dollar, through the so-called Himalaya Exchange.  Guo explained that H-Coin could be purchased using H-Dollar and that H-Dollar would be linked to the U.S. Dollar on a 1-to-1 basis.

114.    Guo told prospective investors in the November 1, 2021 announcement that the price of H-Coin "will be far beyond your imagination."

115.    On or around the same date, Guo released a music video entitled "Hcoin to the Moon" on YouTube and Vevo.  GNews' website also posted a link to the music video and referred to it as "Mr. Guo's new song."

116.    The phrase "to the moon" is used in the crypto asset space to signal expectations

that a crypto asset will dramatically increase in value.

117.    The "Hcoin to the Moon" video prominently featured Guo and provided the website address for the so-called Himalaya Exchange, through which investors could purchase H-Coin.

118.    The "Hcoin to the Moon" video also contained a caption stating in English, "20% gold reserve attaches to the value."

119.    Similarly, on or about November 1, 2021, the GNews website, which is operated by Guo and Saraca, reported that H-Coin would be "pegged to gold" through gold reserves "equal to 20% of the market value of the H-Coin."

120.    Guo, who has been seeking asylum in the U.S. since 2017, made the statements regarding H-Coin discussed above while residing in the United States.

121.    Guo also knew, or recklessly disregarded, the false and misleading nature of the his statements relating to (i) the supposed gold backing of 20% of H-Coin and (ii) his proffered intent to repay H-Coin investors for their losses.

122.    Based on the H-Coin Offering's initial issuance (1 billion H-Coins) and subsequent fluctuations in its purported trading value (from $.10 to $46 per coin), as much as $9.2 billion in gold reserves would have been required to cover Guo's promise of securing 20% of H-Coin's value through gold reserves, which neither Guo nor the so-called Himalaya Exchange possessed at any point.

123.    Guo also lacked the financial resources to cover investor losses from the sale of 1 billion H-Coin.

124.    Guo filed for personal bankruptcy, where he declared assets of $100,000 or less, less than four months after making this promise to investors.

125.     Within days of the H-Coin and H-Dollar launch, on or around November 12, 2021, various media articles reported that $100 million had already been raised from the initial sale of H-Coin and that its price has increased from its initial offering price of $.10 to $27.

126.     On or around the same date, the CEO of the Himalaya Exchange was quoted in certain articles as saying that one billion H-Coin had already been sold, equating to a market value of $27 billion, and that the platform had opened more than 20,000 accounts for H-Coin trading purposes.

127.     As of in or around October 2022, thousands of investors had purchased at least $500 million worth of H-Coins or H-Dollars, including at least approximately $373 million purchased on or after November 1, 2021.  These funds were pooled in U.S. bank accounts belonging to the so-called Himalaya Exchange and purportedly used to pay for salaries and consulting firms.

128.     Some H-Coin investors have attempted unsuccessfully to liquidate their purported H-Coin holdings.

## VII.     The Subject Offerings Constituted the Offer and Sale of "Securities"

129.     As with the GTV Private Placement, which involved the offer and sale of GTV common stock, the other Subject Offerings constituted the offer and sale of "securities" under the federal securities laws.

130.     The Convertible Loan Offering constituted offers and sales of "securities" under the federal securities laws because of the ability of investors to convert their loans into GTV common stock.

131.     In addition, the convertible loans that were offered and sold through the Convertible Loan Offering are notes that are securities based on *Reves v. Ernst & Young*, 494 U.S. 56, 64-65 (1990).  Specifically, investors purchased the notes expecting to earn profits in

the form of interest based on the performance of the Farms and GTV and to invest in GTV, while the seller's stated purpose was to raise money for "general working capital purposes," *i.e.*, for general use of a business enterprise. The convertible loans were offered through a general solicitation to a broad segment of the public, and the public would reasonably expect that these loans convertible to GTV common stock were investments. There also is no other regulatory scheme that would render the application of the federal securities laws unnecessary. Thus, under *Reves*, the convertible loans were notes and offered and sold as securities.

132.    Moreover, the convertible loans were also offered and sold as investment contracts and, therefore, are securities under Section 2(a)(1) of the Securities Act, pursuant to *SEC v. W.J. Howey Co.*, 328 U.S. 298-99 (1946). The Convertible Loan Offering involved an investment of money that was pooled as part of a common enterprise in the bank accounts controlled by Guo, and investors would share in the success of the enterprise through the returns on the loan that were promised and the ability to convert the loan to GTV stock. Convertible Loan Offering investors, who were entirely passive, also had a reasonable expectation of profits that would be derived from the entrepreneurial and managerial efforts of GTV based on the glowing statements made by Guo as to GTV's valuation and secondary market trading activity.

133.    The G-Clubs memberships constituted offers and sales of GTV and G-Fashion common stock and, therefore, are securities under the federal securities laws.

134.    The G-Clubs memberships are securities under Section 2(a)(1) of the Securities Act because, pursuant to *Howey*, they were offered and sold as investment contracts. Guo represented to prospective G-Clubs members that they would receive GTV and/or G-Fashion stock in exchange for their investments. The G-Clubs memberships involved an investment of money that was pooled as part of a common enterprise in the bank accounts controlled by

G-Clubs.  G-Clubs Offering investors, who were entirely passive, also viewed the G-Clubs

Offering as an opportunity to profit from the entrepreneurial and managerial efforts of GTV and

G-Fashion based on the glowing statements made by Guo as to GTV's and G-Fashion's

valuation and secondary market trading activity of GTV stock.  Specifically, when touting the

ability of G-Clubs Offering investors to obtain GTV and G-Fashion stock, Guo stated GTV was

now worth up to 20 times as much per share and routinely touted the prospects of GTV's and

G-Fashion's online platform.

135.    Because G-Clubs Offering investors were told that G-Clubs memberships were a

way to obtain GTV and G-Fashion stock, G-Clubs Offering investors' return on investment

depended on the success or failure of (1) GTV's management's ability to develop its social

media platform and/or (2) G-Fashion's management's development of a "Multi-lingual fashion

e-commerce platform" and the desirability of its "high end collection by the world's top

designers" and "featured furniture line (work in progress)" that were to be sold on the platform.

Therefore, G-Clubs Offering investors, some of whom purchased multiple memberships and/or

paid in excess of the $50,000 highest tier membership, had a reasonable expectation that they

would obtain future profits if GTV and/or G-Fashion were successful in its entrepreneurial and

managerial efforts to develop its businesses.

136.    The H-Coins that were offered and sold are investment contracts, and therefore

are securities, under Section 2(a)(1) of the Securities Act, based on the Supreme Court's

framework in *Howey*.  H-Coin investors paid U.S. dollars or H-Dollars to receive H-Coins

through wire transfers and checks to U.S. bank accounts belonging to the so-called Himalaya

Exchange or through transfers on its online platform.  H-Coin investors shared equally in price

increases or decreases of H-Coin.  H-Coin investors, who were passive, also had a reasonable

expectation of profits that would be derived from the entrepreneurial and managerial efforts of the Himalaya Exchange, including its ability to develop an online platform through which investors could transact using H-Coins.

## FIRST CLAIM FOR RELIEF
### Violation of Section 17(a) of the Securities Act
### (Guo)

137.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 136.

138.     By virtue of the foregoing, in connection with each of the GTV Private Placement, Convertible Loan Offering, G-Clubs Offering and H-Coin Offering, Defendant Guo, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, (i) employed devices, schemes and artifices to defraud; (ii) obtained money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

139.     By reason of the foregoing, Defendant Guo, directly or indirectly, violated and, unless enjoined, will again violate Securities Act Sections 17(a) [15 U.S.C. §§ 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
### (Guo)

140.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 136.

141.     By virtue of the foregoing, in connection with each of the GTV Private Placement, Convertible Loan Offering, G-Clubs Offering and H-Coin Offering, Defendant Guo,

directly and indirectly, in connection with the purchase and sale of securities and by the use of

means and instrumentalities of interstate commerce, or the mails, knowingly or recklessly

(i) employed devices, schemes or artifices to defraud; (ii) made untrue statements of material fact

and omitted to state material facts necessary in order to make the statements made, in the light of

the circumstances under which they were made, not misleading; and (iii) engaged in acts,

practices and courses of business which operated or would have operated as a fraud and deceit

upon purchasers of securities and upon other persons.

142.    By reason of the foregoing, Defendant Guo, directly or indirectly, have violated

and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and

Rules 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

**THIRD CLAIM FOR RELIEF**
**Violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act**
**(Je)**

143.    The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 76 and paragraphs 86 through 93.

144.    As described above, in connection with the GTV Private Placement, Defendant

Je, in the offer and sale of securities, by use of the means and instruments of transportation or

communication in interstate commerce or by use of the mails, directly or directly, (i) employed

devices, schemes and artifices to defraud; and (ii) engaged in transactions, practices, and courses

of business which operated or would operate as a fraud or deceit upon the purchasers of such

securities.

145.    By reason of the foregoing, Defendant Je, directly or indirectly, violated and,

unless enjoined, will again violate Securities Act Sections 17(a)(1) and (3) [15 U.S.C.

§§ 77q(a)(1) and (3)].

## FOURTH CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and
### Rules 10b-5(a) and 10b-5(c) thereunder
### (Je)

146.    The Commission re-alleges and incorporates by reference here the allegation in paragraphs 1 through 76 and paragraphs 86 through 93.

147.    As described above, in connection with the GTV Private Placement, Defendant Je, directly and indirectly, in connection with the purchase and sale of securities and by the use of means and instrumentalities of interstate commerce, or the mails, knowingly or recklessly (i) employed devices, schemes or artifices to defraud; and (iii) engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers of securities and upon other persons.

148.    By reason of the foregoing, Defendant Je, directly or indirectly, have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## FIFTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 17(a)(2) of the Securities Act
### (Je)

149.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 76 and paragraphs 86 through 93.

150.    As described above, in connection with the GTV Private Placement, Defendant Guo, directly or indirectly, in the offer or sale of securities by the use of the means or instruments of transportation or communication in interstate commerce or the mails, knowingly, recklessly, or negligently obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

151.     By engaging in the conduct described, Defendant Guo violated Securities Act Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

152.     Defendant Je intentionally, knowingly or recklessly provided substantial assistance to Defendant Guo.

153.     By reason of the foregoing, Defendant Je aided and abetted the violations of Section 17(a)(2) of the Securities Act by Defendant Guo in connection with the GTV Private Placement and, pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)], Defendant Je is liable to the same extent as Defendant Guo for his violations of Section 17(a)(2) of the Securities Act.

### SIXTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5(b) thereunder
### (Je)

154.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 76 and paragraphs 86 through 93.

155.     As described above, Defendant Guo, directly or indirectly, in connection with the purchase and sale of securities for the GTV Private Placement, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, intentionally, knowingly, or recklessly, made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

156.     By engaging in the conduct described, Defendant Guo violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. 240.10b-5(b)].

157.     Defendant Je intentionally, knowingly, or recklessly provided substantial assistance to Defendant Guo.

158.    By reason of the foregoing, Defendant Je aided and abetted the violations of Section 10(b) [15 U.S.C. § 78j(b)] of the Exchange Act and Rule 10b-5(b) [17 C.F.R. 240.10b-5(b)] thereunder by Defendant Guo and, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendant Je is liable to the same extent as Defendant Guo for his violations of Sections 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

### SEVENTH CLAIM FOR RELIEF
### Violations of Sections 5(a) and (c) of the Securities Act
### (Guo)

159.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 76 and paragraphs 129 through 136.

160.    In connection with the GTV Private Placement, the Convertible Loan Offering, and the G-Clubs Offering, Defendant Guo, directly or indirectly, (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or for delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; or (iii) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

161.    By reason of the foregoing, Guo violated and, unless enjoined, will again violate, Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and 77e(c)].

## EIGHTH CLAIM FOR RELIEF
### Violations of Sections 5(a) and (c) of the Securities Act
### (Mountains of Spices)

162.　The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 33, paragraphs 66 through 93, and paragraphs 129 through 132.

163.　In connection with the Convertible Loan Offering, Defendant Mountains of Spices directly or indirectly, singly or in concert, (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or for delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; or (iii) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

164.　By reason of the foregoing, Defendant Mountains of Spices violated and, unless enjoined, will again violate, Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and 77e(c)].

## NINTH CLAIM FOR RELIEF
### Violations of Sections 5(a) and (c) of the Securities Act
### (G Club Operations)

165.　The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 33, paragraphs 66-76, paragraphs 94 through 106, paragraph 129, and paragraphs 133 through 135.

166.　In connection with the G-Clubs Offering, Defendant G Club Operations, directly

or indirectly, singly or in concert, (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or for delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; or (iii) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

167.    By reason of the foregoing, Defendant G Club Operations violated and, unless enjoined, will again violate, Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and 77e(c)].

## TENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (All Relief Defendants)

168.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 106 and paragraphs 129 through 135.

169.    Between February 2021 and October 2021, Relief Defendant Mei Guo received at least $19 million in Convertible Loan Offering investor funds.  Mei Guo had no legitimate claim to the funds she received.  Mei Guo obtained the funds under circumstances in which it is not just, equitable, or conscionable for her to retain the funds, and therefore was unjustly enriched.

170.    From January 2021 through June 2021, Relief Defendant Qiang Guo received at least $31 million of proceeds from the Convertible Loan Offering and at least $3.5 million in proceeds from the G-Clubs Offering.  Qiang Guo had no legitimate claim to the funds he

received.  Qiang Guo obtained the funds under circumstances in which it is not just, equitable, or

consciable for her to retain the funds, and therefore was unjustly enriched.

171.    In October 2020, Relief Defendant Ngok received $5 million of proceeds from the

Convertible Loan Offering.  Ngok had no legitimate claim to the funds she received.  Ngok

obtained the funds under circumstances in which it is not just, equitable, or conscionable for her

to retain the funds, and therefore was unjustly enriched.

172.    Between January 2021 and February 2021, Relief Defendant Rong received $3

million in Convertible Loan Offering proceeds in her personal bank account.  Rong had no

legitimate claim to the money she received.  Rong obtained the funds under circumstances in

which it is not just, equitable, or conscionable for her to retain the funds, and therefore was

unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final

Judgment:

## I.

Permanently enjoining Guo and his agents, servants, employees and attorneys and all

persons in active concert or participation with any of them from violating, directly or indirectly,

Sections 5(a) and (c) and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)]

and Sections 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17

C.F.R. § 240.10b-5];

## II.

Permanently enjoining Je and his agents, servants, employees and attorneys and all

persons in active concert or participation with any of them from violating, directly or indirectly,

Sections 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)] and Section 10(b) of the Exchange Act

[15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R.  240.10b-5];

## III.

Permanently enjoining Mountains of Spices and G Club Operations and their agents,

servants, employees and attorneys and all persons in active concert or participation with any of

them from violating, directly or indirectly, Sections 5(a) and (c) of the Securities Act [15 U.S.C.

§§ 77e(a) and 77e(c)];

## IV.

Ordering Defendants to disgorge all ill-gotten gains they received directly or indirectly,

with pre-judgment interest thereon, as a result of the conduct alleged in this Complaint pursuant

to Sections 21(d)(3), 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), (d)(5)

and (d)(7)];

## V.

Ordering Defendants to pay civil monetary penalties under Section 20(d) of the Securities

Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

## VI.

Imposing a conduct-based injunction pursuant to Section 21(d)(5) of the Exchange Act

[15 U.S.C. § 78u(d)(5)], prohibiting Guo from participating in the offer or sale of securities,

including crypto asset securities, except for transactions in his own personal accounts;

## VII.

 Permanently prohibiting Guo and Je from serving as an officer or director of any

company that has a class of securities registered under Section 12 of the Exchange Act [15

U.S.C. § 78l] or that is required to file reports under Section 15(d) of the Exchange Act [15

U.S.C. § 78o(d)], pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section

21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

## VIII.

Ordering Relief Defendants Mei Guo, Qiang Guo, Ngok, and Rong, to pay, with

prejudgment interest, all ill-gotten gains by which they were was unjustly enriched, under

Sections 21(d)(3), 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5)

and 78u(d)(7)]; and

## IX.

Granting any other and further relief this Court may deem just and proper.

### JURY DEMAND

The Commission demands a trial by jury.

Dated: New York, New York
       March 15, 2023

/s/ Antonia M. Apps
**ANTONIA M. APPS**
**REGIONAL DIRECTOR**
Thomas P. Smith, Jr.
Sandeep Satwalekar
Daniel Loss
William T. Conway III
Amanda Rios
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004
(212) 336-5571
lossd@sec.gov

RUBY J. KRAJICK
CLERK OF COURT

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET, NEW YORK, NY 10007
300 QUARROPAS STREET, WHITE PLAINS, NY 10601

www.nysd.uscourts.gov



# Electronic Case Filing
# Rules & Instructions

July 24, 2023, Edition

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

<u>Section</u>                     Table of Contents                     <u>Page</u>

Introduction..................................................................................................... 3

What's New..................................................................................................... 4

1.    Scope of Electronic Case Filing......................................................... 5

2.    Eligibility and Registration................................................................ 6

3.    Consequences of Electronic Filing.................................................... 7

4.    Entry of Court Orders........................................................................ 7

5.    Attachments and Exhibits.................................................................. 8

6.    Sealed Filing....................................................................................... 8

7.    Retention Requirements.................................................................... 13

8.    Signatures........................................................................................... 13

9.    Service of Documents by Electronic Means...................................... 14

10.   Notice of Court Orders and Judgments............................................. 14

11.   Technical Failures............................................................................... 14

12.   Public Access...................................................................................... 15

13.   ECF Basics........................................................................................... 16

14.   Opening a Civil Action....................................................................... 23

15.   Amended Pleadings and Motions...................................................... 26

16.   Judgments........................................................................................... 27

17.   Appeals............................................................................................... 28

18.   Non-Electronic Documents................................................................ 29

19.   Service of Electronically Filed Documents........................................ 29

20.   Attorney Appearances........................................................................ 31

21.   Privacy and Public Access to ECF Cases............................................ 33

22.   Electronic (ECF) Filing Privileges...................................................... 34

23.   ECF Computer System Information.................................................... 35

24.   ECF Help Desk and Training............................................................... 36

Appendix......................................................................................................... 37

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

# Introduction

All new civil and criminal cases filed in this Court after December 2, 2003, are assigned to the court's Electronic Case Filing (ECF) system.    With certain limited exceptions outlined below, documents must be electronically filed. The information in this document applies only to cases assigned to the ECF system.

See section 2, Eligibility and Registration, below for information regarding obtaining permission to electronically file in this court.

Please reference any addenda to these Rules & Instructions for interim updates.

The following should be observed when filing electronically:

- The Federal Rules of Civil and Criminal Procedure,

- The Court's Local Rules,

- The assigned judge's Individual Practices, and

- The Court's Electronic Case Filing Rules & Instructions.

The Court is prepared to assist you in filing electronically in the following manner:

- The SDNY Electronic Case Filing Rules & Instructions are your guide to electronic filing.

- Training in Electronic Case Filing (ECF) is available both in person at the courthouse and on-line at https://www.nysd.uscourts.gov/electronic-case-filing    (*See also section 24 - ECF Help Desk and Training*).

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

# What's New

### July 24, 2023, Edition

### Pro Se Filing by Email

*The court has made permanent the option for pro se parties to submit documents through email.*

**Rule 1.1** Except as expressly provided and in exceptional circumstances preventing a party from filing electronically, all documents required to be filed with the Court must be filed electronically. Any party unable to comply with this requirement must seek permission of the Court to file in the traditional manner, on paper. Any such application made after regular business hours may be submitted through the night depository box maintained pursuant to Local Civil Rule 1.2.

*Pro se* parties without electronic filing privileges (see Rule 2.2 below) may file documents via email subject to the procedures, limitations and payment guidelines set out in Appendix C below.

*Pro se* parties without electronic filing privileges may also submit documents in the traditional manner, on paper, by delivering documents in-person, by regular mail, or after regular business hours through the night depository box located in the lobby of the U.S. Courthouse at 500 Pearl Street, New York, NY. Documents submitted by *pro se* parties in paper form will be scanned and docketed by the Clerk's Office into the ECF system.

### Electronic Criminal Applications

*Effective July 24, 2023, unless expressly permitted by another applicable rule or otherwise ordered by the court, applications identified as "Electronic Criminal Applications" in Appendix B to the court's ECF Rules & Instructions must be filed electronically by attorneys representing the United States through the court's ECF system in accordance with the procedures set forth in Appendix B.*

**Rule 1.3** Unless limited by their terms to civil cases, the provisions of these procedures relating to electronic filing apply in miscellaneous and criminal cases. ~~Electronic filing procedures shall not apply to applications for arrest, search or electronic surveillance warrants; for other orders in aid of or ancillary to a criminal investigation; or to proceedings relating to the grand jury.~~

### Rule 6.2  Is electronic filing under seal in ECF limited to publicly filed civil and miscellaneous cases?

Electronic filing under seal is limited to publicly filed civil and miscellaneous cases and is not permitted in cases sealed in their entirety, or in criminal cases. Electronic filing under seal in magistrate cases is limited by the terms found in appendix B.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

# Part I. Electronic Case Filing Rules

The Court will accept for filing documents submitted, signed, or verified by electronic means that comply with the following rules.

### Section 1. Scope of Electronic Filing

**1.1**    Except as expressly provided and in exceptional circumstances preventing a party from filing electronically, all documents required to be filed with the Court must be filed electronically.    Any party unable to comply with this requirement must seek permission of the Court to file in the traditional manner, on paper.    Any such application made after regular business hours may be submitted through the night depository box maintained pursuant to Local Civil Rule 1.2.

*Pro se* parties without electronic filing privileges (see Rule 2.2 below) may file documents via email subject to the procedures, limitations and payment guidelines set out in Appendix C below.

*Pro se* parties without electronic filing privileges may also submit documents in the traditional manner, on paper, by delivering documents in-person, by regular mail, or after regular business hours through the night depository box located in the lobby of the U.S. Courthouse at 500 Pearl Street, New York, NY.    Documents submitted by *pro se* parties in paper form will be scanned and docketed by the Clerk's Office into the ECF system.

**1.2**    In civil and miscellaneous cases the filing of the initial papers, including complaints, notices, petitions, etc., the payment of any applicable fees and the request for and issuance of summonses will be accomplished electronically.    (*See section 14 - Opening a Civil Action*).

**1.3**    Unless limited by their terms to civil cases, the provisions of these procedures relating to electronic filing apply in miscellaneous and criminal cases.

**1.4**    In a criminal case the indictment or information, including any superseders, shall be filed and given to the defendant in the traditional manner on paper in accordance with the Federal Rules of Criminal Procedure and applicable Local Rules rather than electronically; in addition, service of subpoenas shall be made in the traditional manner on paper in accordance with the Federal Rules of Criminal Procedure and applicable Local Rules.    After a criminal case has been opened, counseled parties must promptly provide the Clerk of Court with electronic copies in PDF-A format of all documents previously provided in paper form.    All subsequent documents must be electronically filed except as provided in these Rules & Instructions or as ordered by the Court.

**1.5**    The Clerk of Court shall write and revise as necessary Instructions to guide Filing Users and maximize the efficiency of the Electronic Case Filing system.    (*See Part II - Electronic Case Filing Instructions*).

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

### Section 2. Eligibility and Registration

2.1      Attorneys admitted to the bar of this Court, including those admitted *pro hac vice* and attorneys authorized to represent the United States, are required to register as Filing Users of the Court's ECF system. Unless excused by the Court, attorneys not already Filing Users appearing in cases must register as Filing Users.    Registration is accomplished through the Public Access to Court Electronic Records (PACER) system.    Registration is in a form prescribed by the Clerk and requires the Filing User's name, address, telephone number, Internet e-mail address and a declaration that the attorney is admitted to the bar of this Court or authorized to represent the United States or admitted *pro hac vice*.    See the ECF page at https://www.nysd.uscourts.gov/attorney-registration for details.

2.2      (a) The Court may permit or require a *pro se* party to a pending civil action to register as a Filing User in the ECF system solely for purposes of that action. Registration is in a form prescribed by the Clerk and requires identification of the action as well as the name, address, telephone number and Internet e-mail address of the party. A sample Motion for Permission for Electronic Case Filing is available here.    The Court may require the party to attend in-person training for Electronic Case Filing as a condition of registering as a Filing User.    If, during the course of the proceeding, the party retains an attorney who appears on the party's behalf the attorney must advise the Clerk to terminate the party's registration as a Filing User upon the attorney's appearance.

         (b) A *pro se* party who is not incarcerated may consent to be a Receiving User (one who receives notices of court filings by e-mail instead of by regular mail, but who cannot file electronically).    A sample *Pro Se* (Non-prisoner) Consent & Registration Form to Receive Documents Electronically is available here.

2.3      Filing Users agree to protect the security of their passwords and immediately notify the Clerk and PACER if they learn that their password has been compromised.

2.4      In a civil action the Clerk will transmit Notices of Electronic Filing (NEF) to:

|     |     |
| --- | --- |
| (a) | the attorney who electronically filed the case initiating document; |
| (b) | each attorney identified on the Civil Cover Sheet or case initiating document in cases opened on the ECF system by the Clerk; |
| (c) | each additional attorney who subsequently appears in the action and electronically files a Notice of Appearance; |
| (d) | any *pro se* party who has received permission from the Court to register as a Filing User; and |
| (e) | any *pro se* party who has registered as a Receiving User. |

In a criminal case the Clerk will enter, as Filing Users to whom Notices of Electronic Filing will be transmitted and who will be granted access to electronically file and retrieve documents in the case, the attorney(s) for the United States identified on the Criminal Designation Form or subsequently identified as representing the United States in the case and each attorney electronically filing a Notice of Appearance on behalf of a defendant.

2.5      An attorney of record may, by written request to the judge, have transmission of Notices of Electronic Filing (NEF) to another attorney in his or her firm terminated.    Please review the judge's Individual Practices.
(*See section 22 - ECF Passwords*).

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

### Section 3. Consequences of Electronic Filing

**3.1**    Except as otherwise provided in section 4 herein, electronic filing of a document in the ECF system consistent with these procedures, together with the transmission of a Notice of Electronic Filing (NEF) from the Court, constitutes filing of the document for all purposes of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Local Rules of this Court and constitutes entry of the document on the docket kept by the Clerk under Federal Rules of Civil Procedure 58 and 79 and Federal Rules of Criminal Procedure 49 and 55.

**3.2**    When a document has been filed electronically, the official record is the electronic recording of the document as stored by the Court (subject to the exception set out in section 4 below), and the filing party is bound by the document as filed.    Except in the case of documents first filed in paper form and subsequently submitted electronically under section 1, a document filed electronically is deemed filed on the date and time stated on the Notice of Electronic Filing (NEF) from the Court.    For *pro se* litigants, paper documents filed with the Court, and subsequently scanned and docketed to the ECF system, shall be deemed filed on the date the documents are received by the Court.    Paper documents scanned and docketed to the ECF system by the court are subject to disposal.

**3.3**    Electronic filing must be completed before midnight local time where the Court is located in order to be considered timely filed that day.

**3.4**    Judges' Individual Practices should continue to be followed with respect to delivery of courtesy copies.    (*See section 19 - Service of Electronically Filed Documents*).

### Section 4. Entry of Court Orders

**4.1**    All orders, decrees, judgments and proceedings of the Court will be filed in accordance with these procedures and entered on the docket kept by the Clerk under Federal Rules of Civil Procedure 58 and 79 and Federal Rules of Criminal Procedure 49 and 55.    Orders of the Court may appear solely in electronic form. Documents may be signed by a judge using an electronic signature or may be scanned so as to contain an image of the judge's signature.

**4.2**    A Filing User submitting a document electronically that requires a judge's signature must promptly deliver the document in such other form, if any, as the Court requires.    (*See section 18 - Non-Electronic Documents*).

**4.3**    All Filing and Receiving Users have an obligation to review the Court's actual order, decree, or judgment, as available on ECF, and should not rely on the description of such order, decree or judgment in the Notice of Electronic Filing (NEF) alone.    In the case of any discrepancy between an order, decree, or judgment of the Court and the description of such order, decree, or judgment in the NEF, the order, decree, or judgment of the Court shall control.

### Section 5. Attachments and Exhibits

**5.1**     Filing Users must submit all documents referenced as exhibits or attachments in electronic form, unless the Court permits paper filing.   Each document filed as an exhibit must be filed as a separately numbered attachment to the main document and must be clearly titled with an objective description of the document (e.g., 6/14/19 Deposition of John Doe; 10/14/21 Letter from Smith to Jones; 3/15/20-3/23/20 Email Thread between Doe and Roe) so that the nature of the exhibit and its relevance are clearly discernible without the need to open the file.   The filing of exhibits in text searchable format is encouraged, but not required.

**5.2**     A Filing User must submit as exhibits or attachments only those excerpts of the referenced documents that are relevant to the matter under consideration by the Court.   Excerpted material must be clearly and prominently identified as such.   Filing Users who file excerpts of documents as exhibits or attachments under this procedure do so without prejudice to their right to file timely additional excerpts or the complete document.   Responding parties may file timely additional excerpts that they believe are relevant or the complete document.   A party may move before the Court for permission to serve and file in hard copy documents that cannot be reasonably scanned.

**5.3**     In cases where the record of an administrative or other prior proceeding must be filed with the Court, such record may be served and filed in hard copy without prior motion and order of the Court.   (*See section 15 – Amended Pleadings and Motions*).

### Section 6.    Filing Under Seal and Redacting in Civil and Miscellaneous Cases

**6.1**     **Do I need permission to file under seal or redact?**

Yes.   Documents may not be placed under seal or redacted without leave of the Court.   A filing under seal must be preceded by either a Motion to Seal, a Letter Motion to Seal or an Order of the Court permitting filing under seal.   (A Motion to Seal is not required for information redacted in accordance with Federal Rule of Civil Procedure 5.2(a).)

**6.2**     **Is electronic filing under seal in ECF limited to publicly filed civil and miscellaneous cases?**

Electronic filing under seal is limited to publicly filed civil and miscellaneous cases and is not permitted in cases sealed in their entirety, or in criminal cases.   Electronic filing under seal in magistrate cases is limited by the terms found in appendix B.

**6.3**     **Must all Motions/Letter Motions to Seal or Redact be electronically filed in ECF?**

Yes.   All Motions to Seal and Letter Motions to Seal/Redact must be electronically filed through ECF.

**6.4**     **Must all proposed sealed documents be electronically filed in ECF?**

Consult the judge's Individual Practices to determine if, in addition to the motion, the proposed sealed document must also be electronically filed on the ECF system.   Where the Individual Practices do not

expressly permit the electronic filing under seal of the proposed sealed document, or are silent on the subject, the proposed sealed document must be submitted in the traditional manner, on paper.

### 6.5    In brief, how do I electronically file a Motion to Seal or Redact?

(a)    Electronically file a Motion or Letter Motion to Seal in public view on the court's ECF system.    The motion must identify the Viewing Level to be applied to the proposed sealed document.

(b)    Electronically file any Affidavit or Declaration in Support of Motion in public view and electronically relate it to the motion.    (For information on redacting supporting documents see 6.8.)

(c)    Electronically file the proposed sealed document under seal using a restricted Viewing Level in ECF, and electronically relate it to the motion.    (For Viewing Levels see below.)

### 6.6    How do I electronically file documents in support of a Motion to Seal or Redact?

Documents filed in support of a Motion to Seal or Redact must be filed separately from the motion, not as attachments to the motion, and each must be electronically related to the motion.    Supporting papers may be filed under seal or redacted only to the extent necessary to safeguard information sought to be filed under seal (see 6.8).

### 6.7    How do I electronically file a proposed sealed document?

Contemporaneous with the filing of the Motion to Seal/Letter Motion to Seal, the proposed sealed document must be separately filed using a restricted Viewing Level selected by the filer from the list below, and it must be electronically related to the motion.

### 6.8    How do I electronically file a redacted document?

It is not possible to file both publicly and under seal in a single docket entry.    You must therefore file the entire document, including exhibits, twice: once publicly in redacted form; and again, as a proposed sealed document in un-redacted form, with the redactions highlighted.    Both documents must be electronically related to the motion.    In the publicly filed entry use the word "Redacted" in the title of the document and in the summary docket text.    If an entire exhibit is confidential, substitute a page in the publicly filed entry noting the exhibit is filed under seal (a/k/a placeholder or slip sheet).    Caution should be exercised when redacting electronically to ensure redacted text is fully masked.    Not all forms of electronic redaction are effective.

### 6.9    What are Viewing Levels, and how can I limit access to a proposed sealed document filed on ECF?

By default, documents filed on the ECF system are open to public inspection.    However, filers may request permission to limit access to a document (seal) filed in ECF (see 6.1).    The filing party has the ability to designate which case participants will have access by selecting the appropriate Viewing Level for the document from the list below.    Absent further restriction by the Court, the filing party will have access to their own filings.

• Public:              No restriction at all (the default option).    The document may be viewed by all PACER users and court personnel;

• Selected Parties:          Access is restricted by the filer to attorneys appearing for selected case participants, selected pro se parties with ECF access, and court personnel; *or*

• *Ex Parte*:               Access is restricted to the attorney(s) appearing for the filing party and court personnel.

## 6.10    Can a non-party case participant view a sealed filing?

Yes, but only if the filing party clicks to grant access to the non-party when filing under the Selected Parties restricted Viewing Level, which will list each case participant by name and party role.    Under the Selected Parties Viewing Level the name of every case participant who has appeared in the case will also appear in the list of persons the filing party may choose to grant access to the sealed filing.    This includes not only plaintiffs and defendants but also other case participants such as Interested Parties, Intervenors, Movants and Miscellaneous parties.    Caution should therefore be exercised when selecting individuals who will receive access to a sealed filing under the Selected Parties option.

## 6.11    When electronically filing under seal, what will be visible to the public?

The motion and supporting papers must be filed in public view.    Each will be visible to the public and should not include confidential information sought to be filed under seal.    Summary docket text on the ECF Docket Report is always visible to the public and should never include confidential information sought to be filed under seal.    Pending a decision of the Court, access to the proposed sealed document(s) will be limited to those persons included in the restricted Viewing Level selected by the filing party (see 6.9).

## 6.12    How do I electronically file under seal or redact pursuant to a prior Court order?

Where a prior order of the Court permits filing your document under seal or in redacted form, and the judge's Individual Practices permit electronic filing under seal, no new motion is necessary.    The document may be electronically filed under seal using a restricted Viewing Level that is consistent with the Court's order, and it must be electronically related to the order.

## 6.13    What happens after the Court rules on the Motion to Seal or Redact?

If the Court grants the motion, the proposed sealed document will retain the requested restricted Viewing Level.

If the Court denies the motion, in whole or in part, the Court may modify the Viewing Level restriction or the Selected Parties permitted to view the document and/or limit the extent to which the document may be sealed and/or redacted, or unseal the document in its entirety by removing the restricted Viewing Level.

The Court may, by specific order or Individual Practice, require a previously sealed document to be unsealed or filed in redacted form for the public record in accordance with Federal Rule of Civil Procedure 5.2(d).

## 6.14    How do I electronically file a new civil case under seal in whole or in part?

By first electronically filing a motion to seal in a new miscellaneous case in ECF, then filing the civil case in the traditional manner, in paper form (if your motion is granted).    The miscellaneous case will be available for public inspection – only the motion (and attached documents) will be automatically filed under seal.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

No filing fee is required.

**Step 1:** File a Motion to Seal in a new Miscellaneous Case in ECF

Electronically open a new miscellaneous case in ECF (use Miscellaneous Nature of Case M-98).    A separate motion to file the application under seal is not required (authority to file under seal is provided by Standing Order (21-MC-13).    Unless ordered unsealed by the court, the application will remain under seal regardless of the court's decision on the motion.

**(a)**    If seeking to file a fully sealed case filed in the traditional manner, in paper form:

1. Enter "ABC vs. DEF" when prompted for the party names;
2. File a MOTION TO FILE CIVIL CASE UNDER SEAL.
   Include the following as attachments to the MOTION:
   - ✓ A Miscellaneous Civil Cover Sheet with the true party names;
   - ✓ Supporting documents, such as an Affidavit in Support and Memo of Law;
   - ✓ A proposed sealed Complaint;
   - ✓ A proposed ORDER TO FILE CIVIL CASE UNDER SEAL (use sample order found in the Appendix);
3. Publicly file a Miscellaneous Civil Cover Sheet using "ABC vs. DEF" for party names.

*- - - Or - - -*

**(b)**    If seeking only to redact the complaint (or any part of a case initiating document) in an otherwise publicly available case:

1. Enter lead party name(s) when prompted (if seeking to redact a party name, enter "ABC vs. DEF");
2. File a MOTION TO FILE CIVIL CASE UNDER SEAL.
   Include the following as attachments to the MOTION:
   - ✓ A Miscellaneous Civil Cover Sheet with the true party names;
   - ✓ Supporting documents, such as an Affidavit in Support and Memo of Law;
   - ✓ A proposed sealed Complaint in unredacted format for filing under seal;
   - ✓ A proposed sealed Complaint in redacted format for public filing;
   - ✓ A proposed ORDER TO FILE REDACTED COMPLAINT (use sample order found in the Appendix);
3. Publicly file a Miscellaneous Civil Cover Sheet with true party names (if seeking to redact a party name, enter "ABC vs. DEF").

**Step 2:** File the Civil Case in Paper Form

**(a)**    If the Court grants a Motion to file the new civil case fully under seal, it must be filed in the traditional manner, in paper form in accordance with the court's Non-Electronic Sealed Filing Instructions found under the Cases menu option on the court's website.    Include a copy of the sealing order, the sealed complaint and both versions of the Civil Cover Sheet ("ABC vs DEF" and true party names).    All subsequent filings must be submitted in paper form, until further order of the court.

*- - - Or - - -*

**(b)**    If the Court grants a Motion to seal or redact only the complaint (or any part of a case

initiating document) in an otherwise publicly available case, file the new civil case in the traditional manner, in paper form, in accordance with the Non-Electronic Sealed Records Filing Instructions.    Include: a copy of the sealing order; the unredacted complaint for filing under seal; the redacted complaint for public filing; and a Civil Cover Sheet (If party names  are anonymous, also include a Civil Cover Sheet using "ABC vs DEF" for the party names).    Within 24 hours of filing the civil case in paper form, the filer must send PDF-A copies of the case initiating documents to the Clerk's Office by email in accordance with the process described in Rule 14.2.    After the case is opened on the ECF system by the Clerk's Office, subsequent filings may be submitted in electronic form.

### 6.15    What if I believe a document cannot or should not be electronically filed on ECF?

Any party that (a) is unable to comply with a judge's requirement for electronic filing under seal through the ECF system; (b) believes a document should be filed under seal in paper form because it is a Highly Sensitive Document (see section 6.17 below); or (c) has another reason to believe a document should not be electronically filed, must move for leave of the Court to file the document in the traditional manner, on paper.    Any such motion should be made to the presiding judge in accordance with his or her Individual Practices or, if there is no presiding judge, to the Part I judge.

If the matter is time sensitive, the filing party should promptly contact the Chambers of the relevant judge by telephone and email to alert Chambers to the motion. If Chambers does not respond within two hours, the filing party should call the Clerk of Court at 212-805-0140 during business hours.

### 6.16    What is a Highly Sensitive Document?

As defined in Standing Order 21-MC-0006, subject to approval by a judge, a document may be deemed a Highly Sensitive Document if these Rules & Instructions otherwise permit the document to be filed on the ECF system and (1) it contains classified information or information that could harm national security; or (2) its disclosure could reasonably be expected to cause exceptionally grave damage or injury to any person, entity or institution.

### 6.17    When filing under seal will my co-counsel be able to view the sealed document on ECF?

Yes, provided the co-counsel has appeared for the filing party on ECF.

### 6.18    Will secondary email accounts added to my PACER/ECF account have access to sealed documents?

Yes.    The secondary account holder will have the same access to sealed documents allowed to the primary account holder.

Adding a secondary email account, including a third-party service provider (e.g., PACER Pro, DocketBird, CourtDrive, RECAP), creates the potential to inadvertently reveal sealed or restricted case information. Failure to take proper precautions to protect the confidentiality of information filed under seal could be a violation of an order of the court or state bar rules regarding confidentiality.    See the court's March 27, 2019, Notice to the Bar on this subject.

6.19    When is electronic filing under seal not permitted?

- Electronic filing under seal of proposed sealed documents is not permitted unless authorized by the Individual Practices of the judge to whom the filing is directed.
- Electronic filing under seal is not permitted in criminal cases.
- Electronic filing under seal is not permitted in cases sealed in their entirety.    It is only available to parties seeking to file individually sealed or redacted documents in publicly filed civil and miscellaneous cases.
- Electronic filing under seal is not permitted by pro se parties with electronic filing privileges without express permission of the Court.    This includes pro se parties who have been granted general permission to electronically file documents on ECF.

Where electronic filing under seal is not permitted, the filing shall be submitted in the traditional manner, on paper.    A copy of the sealing order must be attached to the outside of the envelope containing the documents under seal and be hand delivered to the Records Management Office.


## Section 7. Retention Requirements


Documents that are electronically filed and require original signatures other than that of the Filing User must be maintained in paper form by the Filing User until one year after all time periods for appeals expire, except that affidavits, declarations and proofs of service must be maintained in paper form by the Filing User until five years after all time periods for appeals expire.    On request of the Court, the Filing User must provide original documents for review.


## Section 8. Signatures


8.1    The user log-in and password required to submit documents to the ECF system serve as the Filing User's signature on all electronic documents filed with the Court.    They also serve as a signature for purposes of the Federal Rules of Civil Procedure, including Rule 11, the Federal Rules of Criminal Procedure, the Local Rules of this Court, and any other purpose for which a signature is required in connection with proceedings before the Court.

8.2    Electronically filed documents must include a signature block and must set forth the name, address, telephone number and e-mail address all in compliance with the Federal Rules of Civil Procedure and Local Civil Rule 11.1.    In the absence of a scanned signature image, the name of the Filing User under whose log-in and password the document is submitted must be preceded by an "S/" typed in the space where the signature would otherwise appear.

8.3    No Filing User or other person may knowingly permit or cause to permit a Filing User's password to be used by anyone other than an authorized agent of the Filing User.    Filing Users are obligated to immediately bring to the attention of the court any unauthorized filings.

8.4    A document requiring the signature of a party or witness shall be electronically filed in a scanned format that contains an image of the actual signature.

**8.5**    Documents requiring signatures of more than one party must be electronically filed either by: (a) submitting a scanned document containing all necessary signatures; (b) representing the consent of the other parties on the document; (c) identifying on the document the parties whose signatures are required and by the submission of a notice of endorsement by the other parties no later than three business days after filing; or (d) in any other manner approved by the Court.    (*See section 13 - ECF Basics*).

## Section 9. Service of Documents by Electronic Means

**9.1**    In cases assigned to the ECF system, service is complete provided all parties receive a Notice of Electronic Filing (NEF), which is sent automatically by email from the Court (see the NEF for a list of who did/did not receive notice electronically).    Transmission of the NEF constitutes service upon all Filing and Receiving Users who are listed as recipients of notice by electronic mail.    It remains the duty of Filing and Receiving Users to maintain current contact information with the court and PACER and to regularly review the docket sheet of the case.

**9.2**    Attorneys and *pro se* parties who are not Filing or Receiving Users must be served with a paper copy of any electronically filed pleading or other document.    Service of such paper copy must be made according to the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Local Rules.    Such paper service must be documented by electronically filing proof of service.    Where the Clerk scans and electronically files pleadings and documents on behalf of a *pro se* party, the associated NEF constitutes service.

## Section 10. Notice of Court Orders and Judgments

Immediately upon the entry of an order or judgment in a proceeding assigned to the ECF system, the Clerk will transmit to all Filing and Receiving Users in the case, in electronic form, a Notice of Electronic Filing (NEF).    Electronic transmission of the NEF constitutes the notice required by Federal Rule of Criminal Procedure 49(c) and Federal Rule of Civil Procedure 77(d).    In ECF cases, it remains the duty of Filing and Receiving Users to regularly review the docket sheet of the case.    The Clerk must give notice in paper form to a person who is not a Filing or Receiving User in accordance with the Federal Rules of Civil Procedure or the Federal Rules of Criminal Procedure.    In the case of any discrepancy between an order, decree, or judgment of the Court and the description of such order, decree, or judgment in the NEF, the order, decree, or judgment of the Court shall control.    (*See section 19 - Service of Electronically Filed Documents*).

## Section 11. Technical Failures

A Filing User whose filing is made untimely as the result of a technical failure may seek appropriate relief from the Court.    (*See section 23 - ECF Computer System Information*).

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

## Section 12. Public Access

A person may review filings that have not been sealed by the Court, in person, at the Clerk's Office.

A person may also view available Court records on-line through the Public Access to Court Electronic Records (PACER) electronic public access service at https://www.pacer.gov/.    A person who has PACER access may retrieve docket sheets in civil, criminal and miscellaneous cases; documents in civil and miscellaneous cases assigned to the ECF System; and documents in criminal cases filed after November 1, 2004.    Only counsel for the United States and for a defendant may retrieve documents on-line in criminal cases filed prior to November 1, 2004.    (*See section 13 - ECF Basics*).

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

# Part II. Electronic Case Filing Instructions

### Section 13. ECF Basics

**13.1    May letters be filed electronically?**

Letters addressed to judges who accept letters may be filed electronically.    Parties should consult the assigned judge's Individual Practices to determine if the judge accepts letters at all and, if he or she does, whether the judge has any page limitations on letters and/or requires courtesy copies of letters filed on ECF (and, if so, by what means of delivery).    All letters addressed to the Court must include a subject line with the case name and docket number (e.g., "Re: *Doe v. Smith*, 13 Civ. 1234 (ABC)").    Letters solely between parties or their counsel or otherwise not addressed to the Court may not be filed electronically on ECF (except as exhibits to an otherwise properly filed document).

In civil and miscellaneous cases, letters filed electronically must be filed in the following manner:

- Letters that are informational in nature, and do not request relief, should be filed using the ECF Filing Event LETTER listed under OTHER DOCUMENTS.

- Letters requesting relief must be permitted by the Local Rules and these Rules and must be filed using the ECF Filing Event MOTION.    After selecting the ECF Filing Event MOTION, the Filing User should identify the motion as a LETTER-MOTION.    The Filing User must then select from the following list of motions that may be made by LETTER-MOTION:

> Motion to Adjourn Conference
> Motion to Change Attorney Name on Roll
> Motion to Compel
> Motion for Conference
> Motion to Consolidate Cases
> Motion to Continue
> Motion re: Discovery
> Motion to Expedite
> Motion for Extension of Time
> Motion for Extension of Time to Amend
> Motion for Extension of Time to Answer
> Motion for Extension of Time to Complete Discovery
> Motion for Extension of Time to File Document
> Motion for Extension of Time to File Response/Reply
> Motion for Extension of Time re Transcript
> Motion to File Amicus Brief
> Motion for Leave to File Document
> Motion for Leave to File Excess Pages
> Motion for Local Rule 37.2 Conference

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

        Motion for Oral Argument
        Motion to Reopen
        Motion to Reopen Case
        Motion to Seal
        Motion to Stay
        Motion to Substitute Attorney

- If the Filing User is making a type of motion that does not appear in this list, the motion may not be made by letter.
- If a motion is made by letter, the opposing party may file any response in letter form and the moving party may file any reply in letter form. When filing such a response letter or reply letter, the Filing User should answer yes when prompted if the filing is in connection with a letter-motion.

In criminal cases, letters filed electronically must be filed in the following manner:

- Letters relating to sentencing should be filed using the ECF Filing Event SENTENCING SUBMISSION.
- All other letters requesting relief should be filed using the ECF Filing Event MOTION. After selecting the ECF Filing Event MOTION, the Filing User should identify the motion as a LETTER-MOTION. If a motion is made by letter, the opposing party may file any response in letter form and the moving party may file any reply in letter form. When filing such a response letter or reply letter, the Filing User should answer yes when prompted if the filing is in connection with a LETTER-MOTION.
- All other letters - that is, letters that are informational in nature and do not request relief - should be filed using the ECF Filing Event LETTER listed under OTHER DOCUMENTS.

## 13.2    In brief, how do I file a document electronically?

(a)      On the Internet go to https://www.pacer.gov/ to reach the court's ECF system.

(b)      Select the appropriate category, CIVIL or CRIMINAL.

(c)      Find the appropriate ECF Filing Event, or title, for the document. Find a list of ECF Filing Events in the ECF Docketing Events List.

(d)      Indicate the party filing the document (hold down the control key to designate more than one party).

(e)      Upload a PDF-A version of the document. Include any exhibits as attachments to the main document. Separately file supporting documents such as a Memorandum of Law or Affidavit in Support.

(f)      Save the final screen, the Notice of Electronic Filing (NEF).

(g)      Submit a paper courtesy copy to the judge if required (see the judges' Individual Practices at https://nysd.uscourts.gov/judges).

## 13.3    How are exhibits filed?

Exhibits must always be filed as attachments to a document. Exhibits should not be scanned into the

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

same PDF file with the main document.    Each attachment must be clearly titled in the ECF entry, so the subject of the exhibit is clear.    For example: NOTICE OF REMOVAL (Attachments: #1 State Court Complaint, #2 State Court Summons).    The filing of exhibits in text searchable format is encouraged, but not required.

### 13.4    What is the secure website for electronic filing on the SDNY ECF system?

To file electronically, go to <u>https://www.pacer.gov</u>, or link to the filing website via the Court's website <u>https://www.nysd.uscourts.gov</u>.

### 13.5    What is the public website for information about the Court?

For publicly available information, go to <u>https://www.nysd.uscourts.gov</u> (no password required).    From the homepage click on ECF for information on Electronic Case Filing.

### 13.6    What are the mailing addresses for the Court?

- United States District Court, Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312;
- United States District Court, Southern District of New York, Thurgood Marshall United States Courthouse, 40 Centre Street, New York, NY 10007-1312; and
- United States District Court, Southern District of New York, Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, NY 10601-4150.

### 13.7    How can I tell if my case is an ECF case?

All new civil, criminal and miscellaneous cases are assigned to the ECF system.    The docket sheet will include the letters "ECF" in the upper right corner and an entry titled "CASE DESIGNATED ECF".

### 13.8    If a case is deemed an ECF case, am I required to file documents electronically?

Yes.    In an ECF case the Filing User is responsible for electronically filing documents over the Internet using a secure SDNY log-in and password.    With certain exceptions outlined below, the Clerk's Office will not accept paper filings in an ECF case.    (See *section 18 - Non-Electronic Documents*).

### 13.9    May I file documents electronically in a non-ECF (paper) case?

No.    Do not file documents electronically in non-ECF (paper) case.

### 13.10    Will the Court file documents electronically in a non-ECF (paper) case?

Yes, the Court may file Orders and Opinions in electronic format in a non-ECF (paper) case.    This will not convert a non-ECF case to an ECF case, and parties should continue to file documents on paper.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

**13.11    Can I file electronically at any time?**

Yes. You can file electronically 24 hours a day, 7 days a week, 365 days a year.    Filing must be <u>completed</u> before midnight local time where the Court is located in order to be considered timely filed that day.    (*See section 3 - Consequences of Electronic Case Filing*).

**13.12    When is an electronically filed document deemed filed?**

An electronically filed document is deemed filed on the "filed on" date indicated on the Notice of Electronic Filing (NEF).    (*See section 3 - Consequences of Electronic Case Filing*).

**13.13    What is a docket sheet, and how can I view one?**

The docket sheet is the official record of a case.    You can view the docket sheet, including images of electronically filed documents, at the Clerk's Office or remotely via the Public Access to Court Electronic Records (PACER) electronic public access service (https://www.pacer.gov).    (*See section 12 - Public Access*).

**13.14    Should I routinely view the docket sheet in my case?**

Yes.    In ECF cases parties are alerted to case activity by a Notice of Electronic Filing (NEF) sent by email. However, e-mail is not infallible.    It remains the duty of Filing and Receiving Users to regularly review the docket sheet of the case in order not to miss a filing and in order to ensure all items filed using his/her ECF password are authorized filings.    Filing Users are obligated to immediately bring to the attention of the court any unauthorized filings.    (*See section 9 - Service of Documents by Electronic Means*).

**13.15    How do I sign an electronically filed document?**

The ECF log-in and password of the filing attorney serve as an electronic signature.    The filing attorney may sign a document by placing an "S/" before his or her typed name or by using a digital image of his or her signature.    The attorney's name and contact information, including e-mail address, must appear in the signature block below the signature line.    Signatures for all others (clients, witnesses, etc.) must be scanned in order to capture the ink signature.    (*See section 8 - Signatures*).

**13.16    How will I know if it is appropriate to electronically file my document?**

First, determine if your case is an ECF case - not all cases are ECF cases.    When filing in an ECF case, if you can find an ECF Filing Event that directly matches your document then it should be electronically filed.    If you cannot find a matching ECF Filing Event, it may not be appropriate to file electronically.    See the list of non-ECF documents in section 18.    (*See section 24 - ECF Help Desk and Training*).

**13.17    How do I find the correct ECF Filing Event for my document?**

When filing electronically you will be asked to name your document by selecting the appropriate ECF Filing Event.    The ECF Filing Event is essentially the title of the document on the docket sheet, such as Motion

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

for Summary Judgment or Affidavit in Support of Motion.    ECF Filing Events are listed by category on the ECF system.    Within each category is an alphabetical listing of available ECF Filing Events.    You may use the search function to find your Filing Event.    The ECF Docketing Events List is useful for finding your event and the category in which it is listed.    If you cannot find the appropriate event for your document <u>do not file, it using the wrong event</u>.    For assistance contact the ECF Help Desk at helpdesk@nysd.uscourts.gov, or call (212) 805-0136 during business hours.    (*See section 24 - ECF Help Desk and Training*).

## 13.18    Are proposed orders, judgments, stipulations and consents electronically filed in civil cases?

Yes.    In civil cases proposed orders, including orders to show cause with a temporary restraining order or other request for emergency relief, judgments, stipulations and consents must be filed electronically on the court's ECF system using the Filing Events found under PROPOSED ORDERS.    This requirement applies to publicly filed civil and miscellaneous cases, both pending and newly filed.

Filers are required to use the specific ECF Filing Event that correctly describes the proposed order.    See the August 1, 2018, Addendum for a list of electronically filed proposed orders, judgments, stipulations and consents and the associated ECF Filing Events.

In criminal cases, proposed orders must not be filed electronically but should be submitted to chambers directly, outside of the ECF system.

## 13.19    Is an Order to Show Cause that includes a Temporary Restraining Order filed electronically?

Yes.    A person wishing to file a proposed Order to Show Cause that provides notice to their adversary and includes a Temporary Restraining Order or other proposed order for emergency relief must:

>    (a)    Electronically file the application through the court's ECF system; then

>    (b)    In a *newly filed case*, telephone the Clerk's Office at (212) 805-0140 during business hours to alert the court to your application; or

>    (c)    In a *pending case*, see the judge's Individual Practices for information regarding how to alert chambers to your application.    If there has been no response from chambers within two (2) hours, you may telephone the Clerk's Office at (212) 805-0140 before the end of the business day.

This requirement applies to publicly filed civil and miscellaneous cases, both pending and newly filed.

Applicants may use the ECF Filing Events titled MOTION TO SHOW CAUSE, PROPOSED ORDER TO SHOW CAUSE WITH EMERGENCY RELIEF, MOTION FOR TEMPORARY RESTRAINING ORDER and PROPOSED TEMPORARY RESTRAINING ORDER.

Supporting documents must be separately filed, electronically and contemporaneously, through the court's ECF system.    Any opposition must also be filed electronically through the court's ECF system.    (If necessary, see section 6 for information regarding filing under seal.)

If a personal appearance is required by the Court, any order issued in response to such application will detail procedures for such a proceeding.

[Note - a proposed Order to Show Cause <u>without</u> emergency relief must be electronically filed using the ECF Filing Event PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF.]

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

*Pro se* parties without electronic filing privileges are exempt from the requirement to file electronically through the ECF system.

### 13.20   Are Notices of Voluntary Dismissal and Stipulations of Voluntary Dismissal electronically filed?

Yes.    Those Notices of Voluntary Dismissal that cite Fed. R. Civ. P. § 41(a)(1)(A)(i) and Stipulations of Voluntary Dismissal that cite Fed. R. Civ. P. § 41(a)(1)(A)(ii) must be electronically filed on the ECF system. This procedure applies only when the filing dismisses the entire action and does not request any further relief or order of the court.

If the filing seeks an order of the court pursuant to Fed. R. Civ. P. § 41(a)(2) filers should use the ECF Filing Event PROPOSED ORDER.

### 13.21   Should discovery related requests and responses be electronically filed?

No.    Most discovery related requests and responses "must not be filed until they are used in the proceeding or the court orders filing…" (see Fed. R. Civ. P. 5(d)(1)).    When the filing of discovery related material is appropriate only relevant excerpts should be filed (see Local Civil Rule 5.1 and ECF Rule 5.2).

### 13.22   Should I submit courtesy copies?

Read the judge's Individual Practices to learn if courtesy copies are required.    Individual Practices are available on-line at https://www.nysd.uscourts.gov/judges.    (*See section 3 - Consequences of Electronic Case Filing*).

### 13.23   Are transcripts filed electronically?

Pursuant to the Judicial Conference of the United States Policy on Privacy and Public Access to Electronic Case Files, official transcripts of Court proceedings taken by official court reporters, contract court reporters and transcribers may be available electronically through the PACER electronic public access service.

### 13.24   In Consolidated and MDL cases can I file simultaneously in member cases?

Yes.    When filing in Consolidated and Multi-District Litigation (MDL) cases you can save time by electronically filing a document simultaneously in the member case(s) using the computer function titled "Spread Text and Effects" (not available in related cases).    Please observe the following MDL filing rules:

- In consolidated and MDL cases you must file all documents first under the Lead or MDL case number.
- You then may precisely designate the member case(s) in which you wish to simultaneously file.
- Do not file in all cases unless it is appropriate.    Your document may not relate to all member cases.
- The case caption must include all the case numbers in which your document will be filed.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

## 13.25   How to file when the assigned judge is no longer on the bench.

If it is necessary to file in a closed case that is assigned to a judge who is no longer on the bench (due to elevation to another court, retirement, or death) a courtesy copy should be provided to the Clerk of Court. This will assist the court in swiftly reassigning the matter to a sitting judge.

## 13.26   What if I make a mistake in electronic filing?

Immediately refile the document in correct form on the ECF system.   Then send an email to the Court's Quality Assurance Unit (ECF_error@nysd.uscourts.gov).   The email must include the case number, case title, judge's name, the document number and name/title of the document that was incorrectly filed as well as the document number and name/title of the document that was the correctly filed.   Please indicate the error that was made when filing the initial document.   Other questions may be directed to the ECF Help Desk at helpdesk@nysd.uscourts.gov.   For information regarding the filing of sensitive or confidential information in error, see section 21.8.

## 13.27   Must a fully executed Consent to Proceed Before a Magistrate Judge form be electronically filed?

Yes.    A fully executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form (AO-85), filed pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, must be electronically filed using the ECF Filing Event "PROPOSED CONSENT TO JURISDICTION BY US MAGISTRATE JUDGE."

A fully executed Notice, Consent, and Reference of a Dispositive Motion to a Magistrate Judge form (AO-85A) must also be electronically filed using the ECF Filing Event "PROPOSED CONSENT TO MAGISTRATE JUDGE DISPOSITION OF MOTION."

Consent forms must be retained by counsel until the signatures of all parties, or their counsel, are obtained before filing.    Forms that do not include the signatures of all parties must not be transmitted to the court. Forms may be signed in counterpart fashion, provided all signed forms are attached in a single filing.    The form is available at https://nysd.uscourts.gov/forms.

Pro se litigants who are not Filing Users are exempt from that portion of this Rule that requires electronic filing and shall deliver documents to the Clerk's Office in paper form.

## 13.28   How can I obtain a criminal subpoena form signed and sealed by the Clerk of Court?

An attorney may submit a request for a criminal subpoena through the court's ECF system. In response, the system will automatically generate a signed subpoena.   The subpoena will include the court seal superimposed over the signature of the Clerk of Court but will otherwise be blank in accordance with Federal Rule of Criminal Procedure 17(a).

> Step 1: Connect to the court's ECF system using your log-in and password;
> Step 2: Click on the Criminal tab / Criminal Subpoena Forms / Signed Subpoena Forms;
> Step 3: Download a blank subpoena form in fillable PDF format;
> Step 4: Fill in the blanks and print.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

Blank subpoena forms may be requested only when required for use in a pending case. Blank subpoena forms shall not be saved for use in future cases.    A request for a subpoena(s) must be submitted for each new case.    All forms are subject to change, and a new request will generate the most current version of the subpoena form.    The request does not require a case number to be entered in ECF and no evidence of the request will appear on the public docket.

An attorney may continue to obtain a signed paper criminal subpoena form at the Finance intake window in the Clerk's Office.

*Pro se* litigants must submit any request for a subpoena to the Clerk's Office in paper form.


## Section 14. Opening a Civil Action


### 14.1    Must new civil and miscellaneous cases be electronically filed on the ECF system?

Yes.    Attorneys seeking to commence a new civil or miscellaneous case are required to electronically file the new case on the Court's ECF system.    With the exception of certain cases listed below, the Clerk's Office will not accept new civil or miscellaneous cases filed in paper form.

Any party unable to electronically file must seek permission of the court to file in the traditional manner, on paper.    Any such request made after business hours may be submitted through the night depository box maintained pursuant to Local Civil Rule 1.1.

### 14.2    Are there new cases that must not be electronically filed on the ECF system?

Yes.    The cases listed below must not be initiated electronically and must be submitted in the traditional manner, on paper, using the court's depository box located in the lobby of the U.S. Courthouse at 500 Pearl Street, New York, NY, or the U.S. Courthouse at 300 Quarropas Street, White Plains, NY.

- Cases sought to be filed under seal (follow the procedures found in ECF Rule 6.14);
- Civil or miscellaneous cases commenced by a *pro se* party;
- False Claims Act cases (*Qui Tam* or "whistleblower" cases) filed pursuant to 31 U.S.C. §3729, et seq.

In the cases listed above, the filing party must, within 24 hours of filing the case, send PDF-A copies of the case initiating documents to the Clerk's Office by email.    The email must include:

    (a)  the case initiating document, including the case number and judge's initials;
    (b)  the Civil Cover Sheet, form JS 44C/SDNY; and
    (c)  a Related Case Statement (if applicable).

Email case initiating documents to: caseopenings@nysd.uscourts.gov

Each document must be in a separate PDF-A file no larger than 10 megabytes (separate large files into smaller parts if necessary, and label accordingly).    The subject line of the e-mail and the name of the file should list the case number followed by a brief document description (ex. "Re: 01cv1234 JLP-complaint").

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

Failure to do so within 24 hours will delay adding your documents to the computerized ECF docket.

*Pro se* litigants without electronic filing privileges are exempt from that portion of this Rule that requires the party to file electronically or email documents to the Clerk's Office.

### 14.3    How do I electronically file a new civil or miscellaneous case on the ECF system?

Directions for electronically filing a new civil or miscellaneous case may be found at https://www.nysd.uscourts.gov/electronic-case-filing.

### 14.4    How do I select the proper courthouse when filing a new civil case?

The Southern District of New York maintains courthouses in both Manhattan and White Plains.  When selecting a courthouse for assignment of a new civil action, counsel are required to expressly certify that their choice complies with the court's Rules for the Division of Business Among District Judges.

Civil cases, other than cases removed from state court and bankruptcy appeals, are assigned in accordance with Rule 18.    Cases removed from a state court and bankruptcy appeals are assigned in accordance with Rule 20.

Counsel are advised to consider these rules and the facts of their case to avoid making an incorrect or unsupported certification to the court.

### 14.5    Are courtesy copies required?

Consult the judge's Individual Practices to determine if a courtesy copies should be submitted to chambers.

### 14.6    Can a Motion to Appear *Pro Hac Vice* and a new civil or miscellaneous case be electronically filed simultaneously?

Yes.    An attorney who is not admitted to the bar of this court who seeks to file a new civil or miscellaneous case may apply for electronic filing (ECF) privileges at www.pacer.gov, enabling the electronic filing of a Motion to Appear *Pro Hac* Vice and the case initiating documents.

### 14.7    Are summonses issued electronically?

Yes.    After electronically filing a new case, a party must electronically file a REQUEST FOR ISSUANCE OF SUMMONSES and attach proposed summonses in PDF format to the filing.    The Clerk's Office will review the REQUEST and use the ECF system to issue summonses suitable for printing.

### 14.8    Does the method for serving a summons and complaint remain the same?

Yes.    Although new civil and miscellaneous cases must be commenced with the court through electronic filing, the method of serving a summons and complaint remains the same pursuant to Fed.R.Civ.P. 4.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

### 14.9    Am I required to deliver other documents to my adversary?

Yes.    In order to alert an adversary to the requirements of Electronic Case Filing and the assigned Judge's Individual Practices you are required to send to all parties the following documents (available at https://www.nysd.uscourts.gov), either as a PDF attachment to an e-mail or in paper form: (a) Electronic Case Filing Rules & Instructions (this document); and (b) the Individual Practices of the assigned Judge. *Pro se* litigants who are not Filing Users are exempt from this Rule.

### 14.10    How is proof of service for the case initiating document filed?

Electronically file the proof of service for the case initiating document on the ECF. *(See section 7 – Retention Requirements)*.

*Pro se* litigants who have been granted *in forma pauperis* (IFP) status are exempt from this Rule.    *Pro se* litigants who have not been granted IFP status shall deliver the original paper proof of service with summons attached to the Clerk's Office.    *(See section 19 - Service of Electronically Filed Documents)*.

### 14.11    Are records from state or administrative courts electronically filed?

Where the record of an administrative or other prior proceeding must be filed with the Court, and it is voluminous, such record may be filed and served in hard copy without prior motion and order of the Court. (*See section 5 – Attachments and Exhibits*).

### 14.12    How is a § 2255 Motion to Vacate, Set Aside or Correct Sentence Filed?

A Motion to Vacate, Set Aside or Correct Sentence filed pursuant to 28 U.S.C. § 2255, must be electronically filed in the criminal case.    The Clerk's Office will open the associated civil case.    Attorneys do not have to deliver a paper copy or PDF version of the motion to the court.    All subsequent filings related to the motion must be made in the criminal case, not the civil case.

### 14.13    What if I make a mistake electronically filing a new case?

New civil and miscellaneous cases filed electronically that contain the following deficiencies may be administratively closed without prejudice and summons may not be issued unless the deficiency is corrected within five (5) days of electronic transmission by the Clerk of a Notice of Deficient Filing:

- The case initiating document contains the wrong document; an illegible or unreadable document; or no document at all; or
- The filing fee due was not paid, either in whole or in part.

Where a case is administratively closed for one of the reasons above, a filing party may seek to reopen the case after any deficiency is cured.    Within 60 days after the case closing a party should file a Notice of Application to Reopen Case, describing the efforts to cure the deficiency and seeking to reopen the case. Applications to reopen such administratively closed cases filed after 60 days of closing must proceed by motion.    Questions regarding other errors may be directed to the ECF Help Desk at helpdesk@nysd.uscourts.gov or by calling (212) 805-0136 during business hours.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

**14.14    What if I make a duplicate payment when electronically filing a new case?**

You may request a refund of a duplicate payment by sending a letter to the Clerk of Court.    The letter should include the case number, date of payment, the document associated with the payment, the pay.gov receipt number(s) and an email address where you can be reached.    Do not contact your credit card company to request a refund.

<u>Section 15. Amended Pleadings and Motions</u>

**15.1    Are amended pleadings filed electronically?**

Yes.    After a case is opened in accordance with section 14 of these Rules, all subsequent amended complaints, intervenor complaints, third party complaints, etc. must be filed electronically on the ECF system.    If an order of the court is required to file the amended pleading, the signed order must be attached to the filing as an exhibit.    When filing, select only those parties the amended pleading is filed against.    Filers should review the judge's Individual Practices to determine if courtesy copies are necessary.

**15.2    How are summonses issued when electronically filing an amended pleading?**

If a party is added when electronically filing an amended pleading, a summons should be requested by electronically filing a REQUEST FOR ISSUANCE OF SUMMONS and attaching a proposed summons in PDF/A format.    Where multiple parties are added, a rider may be attached to a single summons listing all new parties.    In response, the Clerk's Office will electronically file a SUMMONS ISSUED event containing a summons with an electronic seal suitable for printing.    Summons forms are available at https://nysd.uscourts.gov/forms.    A summons is not necessary when no party is added to a case.

**15.3    What ECF Filing Event should be used to file a motion?**

Use the ECF Filing Event beginning with the word "Motion".    The ECF system contains over 160 separate motion Filing Events, all beginning with the word "Motion".    See the ECF Docketing Events List for a complete list of motions and supporting documents.    Do not use the "Notice" filing event to file a motion.

**15.4    What ECF Filing Event should be used to file supporting papers?**

Use the ECF Filing Events for supporting papers found in the category "Replies, Opposition and Supporting Documents".    Do not use the ECF Filing Event for Motion to file supporting papers.    For example, a motion, an affidavit in support and a memorandum of law in support constitute three separate filings. Labeling each as "Motion" is incorrect and would make it appear three motions were filed instead of one.

**15.5    How can I learn to electronically file amended pleadings and motions?**

Instructions and training information are available at https://www.nysd.uscourts.gov/electronic-case-filing.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

## Section 16. Judgments

**16.1    How do I obtain a Clerk's Certificate of Default before seeking a Default Judgment?**

A Clerk's Certificate of Default is required before seeking a default judgment.

(a)    Electronically file a PROPOSED CLERK'S CERTIFICATE OF DEFAULT (form available at https://www.nysd.uscourts.gov/forms, and

(b)    Electronically file an AFFIDAVIT or DECLARATION in support of the request.

The Clerk's Office will review the request and, where appropriate, electronically file a signed Clerk's Certificate of Default on the ECF system.    After the Clerk's Certificate of Default is entered on the docket, you may then seek a Default Judgment.    For a Default Judgment pursuant to Rule 55 (b)(1), please see rule 16.4 below.    For a Default Judgment pursuant to Rule 55 (b)(2), consult the Individual Practices of the assigned judge to determine the appropriate method (at https://www.nysd.uscourts.gov/judges).    If the judge's Individual Practices contain no specific rules regarding Default Judgments, follow rule 16.4 below.

**16.2    Default Judgment brought by Motion**

(a)    After the Clerk's Office enters a signed Clerk's Certificate of Default on the docket, you may electronically file a MOTION FOR DEFAULT JUDGMENT on the ECF system.

(b)    Electronically file the following documents as separate ECF Filing Events: (1) AFFIDAVIT or DECLARATION IN SUPPORT OF MOTION (include as attachments copies of the case initiating document and the proof of service); (2) STATEMENT OF DAMAGES (unless requesting an inquest); and (3) a PROPOSED DEFAULT JUDGMENT using the Filing Event found under PROPOSED ORDERS.

(c)    Electronically file proof of service for the Motion for Default Judgment.

**16.3    Default Judgment brought by Order to Show Cause (O.S.C.)**

(a)    After the Clerk's Office enters a signed Clerk's Certificate of Default on the docket (see Rule 16.1) you may electronically file a PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF using the Filing Event found under PROPOSED ORDERS.

(b)    Electronically file the following documents as separate ECF Filing Events (1) the AFFIDAVIT or DECLARATION in Support (attach copies of the case initiating document and the proof of service); (2) a STATEMENT OF DAMAGES (unless requesting an inquest); and (3) a PROPOSED DEFAULT JUDGMENT using the Filing Event found under PROPOSED ORDERS.

(c)    Electronically file proof of service for the signed O.S.C.

**16.4    Default Judgment**

Where a judge's Individual Practices contain no specific rules regarding default judgments you may proceed by directly seeking a default judgment.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

(a)    After the Clerk's Office enters a signed Clerk's Certificate of Default on the docket (see Rule 16.1) you may electronically file a PROPOSED DEFAULT JUDGMENT using the Filing Event found under PROPOSED ORDERS.

(b)    Electronically file the following as separate ECF Filing Events (1) the AFFIDAVIT or DECLARATION in Support (attach copies of the case initiating document and the proof of service); and (2) a STATEMENT OF DAMAGES (unless requesting an inquest).

## 16.5    How do I file a Satisfaction of Judgment?

Electronically file a PROPOSED SATISFACTION OF JUDGMENT on the ECF system (form available at https://www.nysd.uscourts.gov/forms).

## 16.6    How do I request an Abstract of Judgment?

Electronically file a PROPOSED ABSTRACT OF JUDGMENT on the ECF system.    (Form available at https://www.nysd.uscourts.gov/forms).    A filing fee is required and must be paid on-line during this filing.    The Clerk's Office will review the request and, where appropriate, issue an Abstract of Judgment.

## 16.7    How do I register a judgment from this district in another district court?

Electronically file a PROPOSED CERTIFICATION OF JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT on the ECF system.    (Form AO 451 is available at https://www.nysd.uscourts.gov/forms).    A filing fee is required and must be paid on-line during this filing.    The Clerk's Office will review the request and, where appropriate, issue a Clerk's Certification of a Judgment to be Registered in Another District.

## <u>Section 17. Appeals</u>

## 17.1    How do I file a Notice of Appeal in a civil or miscellaneous case?

In civil and miscellaneous cases Filing Users must electronically file any Notice of Appeal through the ECF system.    The fee is paid on-line through the ECF system.    Instructions and training are available at https://www.nysd.uscourts.gov/electronic-case-filing.

*Pro se* litigants who are not Filing Users are exempt from that portion of this Rule that requires litigants to electronically file the Notice of Appeal.    The Clerk's Office will scan and electronically file all proper appellate papers received from *pro se* litigants who are not Filing Users.

## 17.2    How do I file a Notice of Appeal in a criminal case?

A Notice of Appeal in a criminal case must be filed in the traditional manner on paper either at the courthouse or by mail.    Include the filing fee if necessary.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

## Section 18. Non-Electronic Documents

### 18.1    In an ECF case, are there documents that should not be electronically filed?

Yes.   The documents listed below must not be filed electronically and must be submitted in the traditional manner, on paper.   These documents may be filed in the Clerk's Office at the U.S. Courthouse at 500 Pearl Street, New York, NY, or the U.S. Courthouse at 300 Quarropas Street, White Plains, NY.   Documents may also be filed after regular business hours by placing them in the court's depository box located in the lobby of the U.S. Courthouse at 500 Pearl Street, New York, NY.   (See Local Civil Rule 1.2.)

- Sealed documents in criminal cases;
- Sealed documents in civil cases directed to judges who don't permit electronic filing under seal;
- Writ of Execution, see below;
- Surety bonds, see below;
- Proposed orders in criminal cases, see below; and
- Notices of Appeal in criminal cases, see section 17;

### 18.2    Is a Writ of Execution filed electronically?

No.    A WRIT OF EXECUTION must be submitted to the Clerk's Office in paper form and include an original signature from the attorney.    The Writ may be mailed to the Orders and Judgments Clerk with a stamped, self-addressed return envelope, or hand delivered.    The Writ of Execution form is available at https://nysd.uscourts.gov/forms.

### 18.3    Are Proposed Orders in Criminal Cases filed electronically?

No.   In criminal cases, proposed orders must not be filed electronically but should be submitted to chambers directly, outside of the ECF system.

### 18.4    Are surety bonds filed electronically?

No. Surety bonds are filed in the traditional manner on paper.    Include a copy of the Court's Order regarding the bond.

## Section 19. Service of Electronically Filed Documents

### 19.1    How is service accomplished for electronically filed documents?

Filing and Receiving Users who have appeared in the case will receive a Notice of Electronic Filing (NEF) by e-mail whenever there is case activity.    The NEF constitutes service upon all Filing and Receiving Users. A hyperlink to a PDF image of any electronically filed document will be included (not all activity includes a PDF document).    The Clerk's Office will no longer mail paper copies of court-initiated documents to Filing

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

and Receiving Users.   The Clerk's Office will mail copies of all court-initiated documents to *pro se* parties who have not registered as Filing or Receiving Users.   (*See section 9 - Service of Documents by Electronic Means*).

### 19.2     Am I required to serve a paper copy of an electronically filed document?

Possibly.   In cases assigned to the ECF system, if all parties receive a NEF, service is complete upon transmission of the NEF by the Court, and you are not required to serve a paper copy.

If any party does not receive a NEF, you are required to accomplish service on that party in the traditional manner, in paper form.   Then you must electronically file proof of service (see below).   The NEF receipt will inform you who will receive notice of the filing "electronically" (by e-mail from the Court) and who will receive notice "by other means" (traditional service in paper form).   (*See section 9 - Service of Documents by Electronic Means*).

### 19.3     Am I required to electronically file proof of service in an ECF case?

Only two circumstances require the electronic filing of proof of service in an ECF case:

(a)     Proof of service for the case initiating document must be electronically filed on the ECF system, and

(b)     Proof of service must be electronically filed when a party is served with a paper document.

*Pro se* parties who are not Filing Users are exempt from that portion of this Rule requiring proof of service to be filed electronically.   (*See section 9 - Service of Documents by Electronic Means*).

### 19.4     Is a filing timely if it is completed before midnight?

Yes.   Filing must be completed before midnight local time where the Court is located in order to be considered timely filed that day.   (*See section 3 - Consequences of Electronic Case Filing*).

### 19.5     Do I receive a receipt when I file electronically?

Yes.   When an electronic filing is successful the final screen will display a Notice of Electronic Filing (NEF), or filing receipt.   The NEF indicates what was filed, by whom, when it was filed and if a document number was assigned on the docket sheet.   If you do not see the NEF screen your filing may not have been successful, and you are advised to check the docket sheet.

### 19.6     Should I routinely view the docket sheet in my case?

Yes.   Although service is accomplished in ECF cases by an e-mail sent by the Court, e-mail is not infallible and you risk missing an e-mail message.   It remains the duty of Filing and Receiving Users to maintain current contact information with the court and PACER and to review regularly the docket sheet of the case. Filing Users are obligated to immediately bring to the attention of the court any unauthorized filings.   (*See section 9 - Service of Documents by Electronic Means*).

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

## Section 20. Attorney Appearances

### 20.1    How does an attorney's name appear on the docket sheet?

When a new civil case is electronically filed on the ECF system, the name of the filing attorney will appear on the docket sheet as attorney of record.    Any co-counsel wishing to appear must electronically file a Notice of Appearance.

If the new civil case is one that must be filed in hard copy form (see Rule 14.2), the Clerk's Office will open the case on the ECF system and add the name of each attorney that appears below the signature line of the case-initiating document.

In a pending case, an attorney may use his or her ECF account to electronically file a Notice of Appearance on his or her own behalf but not on behalf of another attorney.

An attorney responding to a filing must add his or her own name to the docket sheet the first time he or she appears in the case.    When electronically filing the first document, the responding attorney must: (a) click to create an "Association" with the client (i.e., represent the client); (b) ensure the "Notice" box is checked to receive electronic notice of case activity; and (c) click the "Lead" attorney box if applicable.

### 20.2    If the attorney's name is on the docket sheet why doesn't the attorney receive e-mail notification of filings?

It could be because the attorney's name was added to the docket sheet before the attorney obtained electronic filing (ECF) privileges from this court.    In that case the attorney's name and firm address will appear at the top of the docket sheet, but the e-mail address will be missing.    If this is the case the solution is to obtain electronic filing (ECF) privileges at https://www.pacer.gov/.    Or it could be because the attorney filed a Notice of Appearance but failed to check the "Notice" box when creating an association with the client.    In this case, contact the ECF Help Desk at helpdesk@nysd.uscourts.gov, or call (212) 805-0136 during business hours.    (*See section 24 - ECF Help Desk and Training*).

### 20.3    How do I file a Notice of Appearance in an ECF case?

An attorney who joins a case already in progress must electronically file a Notice of Appearance.    When electronically filing the Notice of Appearance, the attorney must: (a) click to create an "Association" with the client (i.e., represent the client); (b) ensure the "Notice" box is checked to receive electronic notice of case activity; and (c) click the "Lead" attorney box if applicable.    Please note the ECF system will not allow an attorney to file electronically a Notice of Appearance on behalf of another attorney.    The Notice of Appearance and the ECF password must belong to the same attorney.    (*See section 2 – Eligibility and Registration*).

### 20.4    How do I file a Motion to Appear *Pro Hac Vice* in an ECF case?

To file a Motion for Admission *Pro Hac Vice* on your own behalf you must:

31

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

(a)    At www.pacer.gov, apply for *pro hac vice* electronic filing privileges; and
(b)    on the S.D.N.Y. ECF system, electronically file a Motion to Appear *Pro Hac Vice* in the appropriate case and pay the required fee.    A sponsoring attorney is not required.

When a sponsoring attorney moves (files) a *Pro Hac Vice* Motion on behalf of an attorney applicant, the sponsoring attorney must notify the attorney applicant when the order has been signed granting *Pro Hac Vice* motion. The attorney applicant must, upon granting of the order, immediately obtain a PACER account, pay the required fee and file a Notice of Appearance online through the court's ECF system.    A separate *Pro Hac Vice* Motion is required for each attorney applicant.

For complete *pro hac vice* instructions go to the Attorney tab of the court's website at https://nysd.uscourts.gov/attorney/prohac.

### 20.5    Must I seek formal admission to this court when my case is transferred as part of a Multidistrict Litigation (MDL) case?

No.    Any attorney of record in any action transferred under 28 U.S.C. § 1407 may continue to represent his or her client in any district court of the United States to which such action is transferred. Parties are not required to obtain local counsel (Rules of Procedure of the U.S. Panel on Multidistrict Litigation, Section I, Rule 2.1(c)).

A CM/ECF account from this court will be required.    Apply for a CM/ECF account at pacer.gov by selecting the MDL option under the attorney admission/e-filing registration link on the Manage My Account page. Include the MDL number.    No fee will be required.

### 20.6    Am I required to notify the Court and PACER when my contact information changes?

Yes.    To ensure communications from the court reach all parties, filing parties are required to notify the court and PACER of any changes in contact information.    Attorneys must file a Notice of Change of Address in every pending case.    For more information go to https://www.nysd.uscourts.gov.    A *pro se* party must notify the court of any changes in contact information, whether or not the party is a Filing or Receiving User, by submitting a Notice of Change of Address for *Pro Se* Litigants form.

### 20.7    Can I specify additional e-mail addresses to receive notification of activity in my cases?

Yes. You can add alternate e-mail addresses in the ECF system in Utilities, Maintain Your Account, and E-mail Information.

### 20.8    Can I receive electronic notification of activity in cases where I do not represent a party?

Yes.    You can add a case to your e-mail notification list on the ECF system even if you don't represent a party to the case.    Click on Utilities, Maintain Your Account, and E-mail Information.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

**20.9    How do I obtain a Certificate of Good Standing?**

A Certificate of Good Standing from this court must be requested through the court's ECF system.    See instructions at https://nysd.uscourts.gov/forms/certificate-good-standing-wall-certificate.

<u>**Section 21. Privacy and Public Access to ECF Cases**</u>

**21.1    Has electronic filing expanded public access to documents?**

Yes, documents filed electronically on the ECF system are more widely available than ever before. Electronic documents can now be viewed over the Internet by anyone with a PACER account.    In order to protect people's privacy and reduce the threat of identity theft, parties should be cautious when filing sensitive information.

**21.2    Who is responsible for redacting sensitive information from filed documents?**

It is the sole responsibility of counsel and the parties to be sure that all documents comply with the rules of this Court requiring redaction of personal identifiers.    Neither the judge nor the Clerk of Court will review documents for compliance with these rules.

**21.3    Am I required to redact certain sensitive information in a document?**

Yes.    Amendments to Federal Rule of Civil Procedure 5.2 and Criminal Procedure 49.1 require that personal identification information be redacted from documents filed with the Court. You should not include sensitive information in any document filed with the Court unless such inclusion is necessary and relevant to the case.    A party wishing to file a document containing the personal data identifiers listed below must file a redacted version in the public file:

   In all cases:

- Social Security Numbers:          include only the last four digits of the number.
- Names of Minor Children:        include only the initials of the child.
- Dates of Birth:                          include only the year.
- Financial Account #'s:             include only the last four digits of these numbers.

   In criminal cases:

- Home Addresses:                      include only the City and State.

**21.4    Is there other sensitive information that I should consider redacting?**

Yes.    Caution should be exercised when filing documents that contain the following:

- Personal identifying numbers (PIN #'s), such as a driver's license number
- Medical records, treatment, and diagnosis

33

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

- Employment history
- Individual financial information
- Proprietary or trade secret information
- Information regarding an individual's cooperation with the government

## 21.5    Am I required to file sensitive information under seal?

No.    In addition to the redacted public filing a party may, but is not required to, file the personal data identifiers listed above by filing under seal.    You may file under seal either: (a) a reference list or (b) an original, unredacted version of the document.

If you find it necessary to file sensitive information, the Court prefers a reference list to the filing of a complete document.    The reference list shall contain the complete personal data identifier(s) and the redacted identifier(s) used in its (their) place in the filing.    The reference list may be amended as of right.

## 21.6    Who should maintain custody of original unredacted documents?

Parties are responsible for maintaining possession of original, unredacted documents, and information redacted from publicly filed documents.    The Court may later require counsel to furnish the unredacted information.

## 21.7    What if I mistakenly file sensitive or confidential information?

(a)    Contact the ECF Help Desk via email at helpdesk@nysd.uscourts.gov.    The subject line should include the words "Emergency Sealing Request".    The filing will be temporarily sealed and made inaccessible to PACER users.    The suggested hours for the electronic filing of sealed documents are 8:30 AM – 4:00 PM, Monday through Friday, excluding holidays, when court staff are available to assist with any difficulties you may encounter.    If the request for assistance is received after business hours, it will be addressed the next business day.

(b)    After notifying the ECF Help Desk, the filing party must ask the presiding judge, in writing, for the filing to be formally sealed by the Court.

(c)    Electronically file a redacted version of the mistaken filing.


## Section 22. Electronic Filing (ECF) Privileges


## 22.1    To file electronically do I need electronic filing (ECF) privileges for the United States District Court for the Southern District of New York?

Yes.    To file electronically in this court, you must have electronic filing (ECF) privileges issued by the U.S. District Court for the Southern District of New York. ECF accounts are available to attorneys in good standing and *pro se* parties granted permission to file electronically.    To obtain electronic filing (ECF) privileges go to https://www.pacer.gov/.    Protect the security of your password. *(See section 2)*.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

**22.2     How do I obtain electronic filing (ECF) privileges if I am already admitted to the bar of this Court?**

An attorney admitted to the bar of this court may register for electronic filing (ECF) privileges ("E-File Registration Only") at https://www.pacer.gov/.

**22.3     How do I gain admission to the bar of this court and obtain electronic filing (ECF) privileges?**

The application to be admitted to the bar of this Court includes a request for electronic filing (ECF) privileges.     Go to https://www.pacer.gov/.

## Section 23. ECF Computer System Information

**23.1     What Internet browser should I use to file electronically on the ECF system?**

Each new version of ECF is tested with specific Internet browsers before release.     Check the ECF log-in page for a list of approved Internet browsers.

**23.2     What is a PDF-A file and how do I create one?**

All documents electronically filed on the ECF system must be in PDF-A format (portable document format). A PDF-A file is created using PDF writer software such as Adobe Acrobat (go to https://www.adobe.com/ for details).     PDF-A files cannot be altered and provide archiving and security features to the filer and the Court.

**23.3     Must documents filed by parties on ECF be in text searchable format?**

Yes.     Documents filed by parties on the ECF system must be in text searchable format.     The filing of exhibits in text searchable format is encouraged, but not required.     Best results are obtained by converting documents directly from word processor format to PDF-A format.

**23.4     Is there a limit to the size of a document that can be filed on ECF?**

Yes.     No single PDF file may be larger than 10.0 megabytes (10.0 mb).     If the filing is too large, the ECF system will not allow it to be filed, and you will not see a Notice of Electronic Filing (NEF or filing receipt) screen.     To determine the size of an Adobe Acrobat PDF file, click on File, Document Properties, Summary.

**23.5     What if my document exceeds the file size limit?**

Converting documents directly from a word processor to PDF-A format creates the smallest possible file in terms of computer memory.     If that is not possible, scan your document at low resolution.     Within the Adobe Acrobat program, on the "Scan Manager" screen, adjust the settings for black and white and 200 dpi (dots per inch).     This allows more pages to fit into a single PDF-A file.     If that does not work, separate an oversized file into 2 or more parts.     Simply label each file 1a, 1b, 1c, etc.     Only relevant excerpts of

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

exhibits should be electronically filed.    (*See section 5 - Attachments and Exhibits*).

### 23.6    What if a technical failure prevents me from filing electronically?

If a technical failure prevents you from filing electronically, follow the steps below:

(a)    Do not attempt to file paper documents in ECF cases.
(b)    If the Court's ECF system is out of order, electronically file as soon as the system is restored.
(c)    If you missed a filing deadline when the ECF system was out of order, attach a statement to your filing explaining how the interruption in service prevented you from filing in a timely fashion.    (*See section 11 - Technical Failures*)

### Section 24. ECF Help Desk & Training

### 24.1    How can I learn how to file electronically?

The Court offers several options for ECF training.    Details are available on the ECF page at https://nysd.uscourts.gov/electronic-case-filing

(a)    In-person training classes.
(b)    Step by step filing instructions can be found on-line in the course materials for our in-person training.    From the ECF page click on Training.    Then click on Instructor Led Training and click on the course title.
(c)    A web-based tutorial for electronic filing is also available.

### 24.2    How do I contact the court's ECF Help Desk?

The court's ECF Help Desk is available via email at helpdesk@nysd.uscourts.gov, or by telephone at (212) 805-0800, Monday through Friday during business hours.

### 24.3    Whom should I contact for assistance with my PACER/ECF account?

For assistance with a log-in or password issue, contact the PACER service center at pacer@psc.uscourts.gov, or by calling (800) 676-6856.

---

The preceding Electronic Case Filing Rules & Instructions have been approved by the Board of Judges of the Southern District of New York.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

## Appendix A1 - Sample Order to File Civil Case Under Seal

*In accordance with ECF Rule 6.14, use the text found in the proposed form order below when seeking to file a new civil case <u>entirely</u> under seal, in paper form.    All subsequent filings must be submitted in paper form until further order of the court.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

*Insert plaintiff's name,*

                Plaintiff                         *Insert Miscellaneous Case Number*

      -against-                         ORDER TO FILE
                                          CIVIL CASE UNDER SEAL

*Insert defendant's name,*

                Defendant
_____

Plaintiff, having moved to file a new civil case under seal in the traditional manner, in paper form, and the Court having reviewed the application and having found sufficient cause under Federal Rule of Civil Procedure 5.2(d) to order this case to be filed under seal, it is hereby

ORDERED this case may be filed under seal.   The parties are directed to proceed in accordance with the instructions for filing under seal found in the court's ECF Rules & Instructions, Rule 6.14, and present the case initiating documents to the Clerk of Court in the traditional manner, in paper form.

The Clerk is directed to restrict access to this order to the selected party viewing level and close this case.

Dated:
      New York, New York

                                        SO ORDERED:

                                      _____
                                                  U.S.D.J.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

## Appendix A2 - Sample Order to File Redacted Complaint

*In accordance with ECF Rule 6.14, use the text found in the proposed form order below when seeking to file a redacted complaint in a case available in public view on ECF.    Subsequent filings may be submitted electronically through the ECF system.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

*Insert plaintiff's name,*

|                | Plaintiff |                | *Insert Miscellaneous Case Number* |
|----------------|-----------|----------------|-------------------------------------|

-against-

ORDER TO FILE
REDACTED COMPLAINT

*Insert defendant's name,*

Defendant
_____

Plaintiff, having moved to file a new civil case with a redacted complaint and the Court having reviewed the application and having found sufficient cause under Federal Rule of Civil Procedure 5.2(d) to order this case to be filed with a redacted complaint in a case available in public view on the court's ECF system and an unredacted complaint filed under seal in the traditional manner, in paper form, it is hereby

ORDERED this case may be filed with a redacted complaint in a case available in public view on the court's ECF system and an unredacted complaint filed under seal in the traditional manner, in paper form.   The parties are directed to proceed in accordance with the instructions for filing under seal found in the court's ECF Rules & Instructions, Rule 6.14, and present the case initiating documents to the Clerk of Court in the traditional manner, in paper form.

The Clerk is directed to restrict access to this order to the selected party viewing level and close this case.

Dated:
        New York, New York                    SO ORDERED:


                                              _____

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

# Appendix B - Electronic Criminal Applications

### A. Scope

In accordance with Standing Order 23-MC-213 ("the Standing Order"), those criminal applications identified below as "Electronic Criminal Applications" must be filed electronically through the court's Electronic Case Filing ("ECF") system:

1.     Applications for Orders issued pursuant to the Stored Communications Act, 18 U.S.C. § 2703(d); and

2.     Applications for Pen Registers and Trap and Trace devices issued pursuant to 18 U.S.C. § 3121, *et seq*.

### B. Participating Filers

At least one court day in advance of any filing of Electronic Criminal Applications pursuant to these rules and procedures, the United States Attorney's Office ("USAO") must inform the Clerk's Office of the names of ECF users who will be authorized to file Electronic Criminal Applications on behalf of the USAO.    Those users will be identified as "Participating Filers," and their ECF accounts will be programmed to enable the filing of Electronic Criminal Applications.    ECF users not designated as Participating Filers will not be able to file Electronic Criminal Applications.    The USAO must provide the Clerk's Office with the names of any new or additional ECF users who will be authorized to file Electronic Criminal Applications at least one court day in advance of such users filing an Electronic Criminal Application.

When a Participating Filer leaves the employment of the USAO the USAO must promptly notify the Clerk's Office in a manner prescribed by the Clerk.    The Clerk shall modify the ECF account of that individual to remove access to documents electronically filed under seal during his/her employment with the USAO. An individual whose ECF account has been so modified may contact the court to reinitiate filing and access privileges in a manner that does not permit access to documents electronically filed under seal during his/her prior employment with the USAO.

### C. Commencement of an Electronic Criminal Application

To submit an Electronic Criminal Application for review by the court, a Participating Filer must open a new case in the court's ECF System. This will create a magistrate case docket in ECF and assign a docket number. The docket number must appear on each document filed in the case.

The court will docket signed orders under seal on the ECF system.    The Participating Filer may print a copy of a signed order from the ECF system.    Upon request by a Participating Filer, the Clerk's Office will provide one or more paper copies of a signed order bearing the raised seal of the court.

Where an extension is sought for an initial Application that was filed before the effective date of the Standing Order, the USAO must contact the Clerk's Office for direction.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

**Appendix B - continued**

New Electronic Criminal Applications that contain the following deficiencies may be administratively closed without prejudice to refiling unless any such deficiency is corrected within five (5) calendar days of electronic transmission by the Clerk of a Notice of Deficient Filing: (1) the case initiating document contains the wrong document; (2) an illegible or unreadable document; or (3) no document.

### D.   Denial of an Electronic Criminal Application

If an Electronic Criminal Application is denied, an order so stating will be electronically filed under seal on the ECF system.   The Participating Filer will be notified of the order through a Notice of Electronic Filing from the ECF System.    Those Electronic Criminal Applications that are denied will remain under seal.

If an Electronic Criminal Application is denied, any Amended Electronic Criminal Application must be electronically filed under the docket number of the original Electronic Criminal Application.

### E.   Extension Requests

Any request for an extension, continuance, or postponement must be electronically filed under the same docket number as the Electronic Criminal Application to which it relates.    If seeking to file such a request in a matter that was initially filed prior to the effective date of the Standing Order, the USAO must contact the Clerk's Office for assistance.

### F.   Exceptions

When the USAO believes that an Electronic Criminal Application, or any document associated with an Electronic Criminal Application, may be a Highly Sensitive Document (as that term is defined in the court's Standing Order regarding Highly Sensitive Documents (21-MC-00006)), it must electronically file a motion for leave to file in paper form using the same docket number as the Electronic Criminal Application to which it relates.    Such filing shall be made in accordance with the procedures found in the court's Standing Order regarding Highly Sensitive Documents (21-MC-00006).

Electronic Criminal Applications may be made outside of the ECF system in exigent circumstances and when there is no ready access to ECF.   When this occurs, the USAO is responsible for filing the Electronic Criminal Application in the ECF system within one court day, or as soon thereafter as is practical.

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

# Appendix C – Pro Se Filing by Email

The United States District Court for the Southern District of New York will accept filings via email from pro se parties without electronic filing privileges subject to the procedures, limitations and payment guidelines set out below.   Pro se parties who are unable to send documents by email may continue to submit documents in-person, by regular mail, or after business hours through the depository box located in the lobby of the U.S. Courthouse at 500 Pearl Street, New York, NY.

## Procedures for Emailing Pro Se Documents for Filing

- Documents submitted electronically must be in PDF format, no larger than 10 megabytes;
- Documents to be filed may be emailed to Pro_Se_Filing@nysd.uscourts.gov;
- Documents to be filed must be attached to the email;
- Documents must be signed by the filing party by either

    (a) signing by hand and then scanning the document;

    (b) signing electronically using a digital signature; *or*

    (c) by typing: "s/Filer's Name;"

- The email and attached documents must contain the filer's name, address, and telephone number;
- For new cases, the subject line of the email must read "PRO SE FILING – NEW CASE;"
- For existing cases, the subject line of the email must read "PRO SE FILING – [case number];"
- A document submitted for filing by email does not have to be delivered to the court in hard copy form.

## Limitations

- Pro Se filings emailed to any email address other than Pro_Se_Filing@nysd.uscourts.gov will be disregarded;
- This email address is solely for submitting attached PDF documents for filing;
- Any additional comments, questions, or other messages in the email will be disregarded;
- Any additional correspondence included in the email will be disregarded.

## Payment for New Cases

- For new cases for which the filing fee is to be paid, payment must be sent separately by mail, within 21 days of filing, addressed to:

    Cashiers-Room 120
    US Courthouse
    500 Pearl Street
    New York, NY 10007

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

**Appendix C – continued**

- Payment must be by money order or certified check only, must include the case number and must be made payable to: Clerk, USDC, SDNY.
- Personal checks will not be accepted.
- A pro se party seeking to waive the filing fee for a new case must include an Application to Proceed Without Prepaying Fees or Costs (IFP Application) form;
- 14 days after the mailing or emailing of any newly filed case, pro se filers should call the Pro Se Intake Unit at 212-805-0175, to learn the case number and the name of the assigned judge.

**Sign-Up for Email Notifications**

Pro Se parties without electronic filing privileges but with an email address are strongly encouraged to consent to receive electronic service of filings through notifications sent by email from the court's Electronic Case Filing (ECF) system.    Electronic service is faster than service by mail and is the same system used by attorneys.

Pro se litigants who wish to consent to receive electronic service must fill out the Consent to Electronic Service (for pro se cases) form.    You may disregard the instruction at the bottom of the form to return the form by mail and instead return the signed consent form by email, in PDF format, to:

Pro_Se_Filing@nysd.uscourts.gov

Pro se litigants who consent to receive electronic service of filings will no longer receive the same documents in paper form by mail.

If you consent to receiving electronic service, you will receive a Notice of Electronic Filing (NEF) by e-mail each time a document is filed in your case.    After receiving the NEF, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.    Once you click the hyperlink and access the document, you may not be able to access the document for free again.    After 15 days, the hyperlink will no longer provide free access.    Any time the hyperlink is accessed after the first "free look", or the first 15 days, you may be charged to view the document.    For this reason, you should print or save the document during the "free look" to avoid future charges.

**Questions**

Questions may be directed to the Pro Se intake Unit at (212) 805-0175.

## INDIVIDUAL RULES OF PRACTICE OF JUDGE PAUL G. GARDEPHE
## CIVIL CASES

**Chambers**                                    **Courtroom**
United States District Court                    40 Foley Square, Courtroom 705
Southern District of New York                   Michael Ruocco, Courtroom Deputy Clerk
40 Foley Square, Room 2104                      Phone:  (212) 805-0102
New York, New York  10007
Phone:  (212) 805-0224
https://nysd.uscourts.gov/hon-paul-g-gardephe

**Unless otherwise ordered, these Individual Practices apply to all civil matters assigned to the Honorable Paul G. Gardephe, except for _pro se_ cases.**

## I.    COMMUNICATIONS WITH CHAMBERS

**A.    Letters.**  Except as otherwise provided below, communications with the Court shall be by letter.  Letters may not exceed 5 pages in length.  Unless accompanied by a request to file under seal, letters shall be filed electronically on ECF.  **Please do not provide courtesy copies of letters.**  See Rule II below regarding sealing requests.  Include the case number on all letters.  Copies of letters to the Court shall be simultaneously delivered to all counsel, whether via ECF notification or other means.  Copies of correspondence between counsel shall not be sent to the Court.  Refer to Rule IV(E) below for letters concerning discovery disputes.

**B.    Telephone Calls.**  Telephone calls to Chambers are permitted **only in emergency situations requiring immediate attention**.  In such situations only, call Chambers at (212) 805-0224.

Ex parte telephone calls will ordinarily not be accepted; wherever possible, counsel for all affected parties should be on the line when a call to Chambers is placed, except to the extent that similarly situated parties have designated a lead counsel to represent them on such a call.  Please be ready to provide your case number when calling Chambers.

**C.    Hand Deliveries.**  Hand deliveries made to Chambers must be simultaneously delivered to all counsel.  Hand-delivered mail should be left with the Court Security Officer at the Worth Street entrance of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007; it may not be brought to Chambers.

**D.    Requests for Extension of Deadlines.**  All requests for extensions of deadlines shall be made as soon as a party is aware of the need for the extension and, in any event, no later than two business days prior to the scheduled deadline, absent an emergency.  Requests should be made in writing in accordance with Rule I(A) above, or by joint stipulation.  The request must state:  (1) the deadline(s) sought to be extended, (2) the length of time requested for the extension, (3) the number of previous requests for extensions and the Court's rulings, (4) the reason for the current request, and (5) whether the adversary consents, and, if not, the reasons given by the adversary for refusing to consent.  If the requested extension affects any other

scheduled dates, <u>the request must list the proposed change for all such other dates</u>. If all parties consent to the extension, a stipulation that reflects the required information may be filed. <u>Note</u>: to the extent a party's adversary does not consent to a request regarding a discovery deadline, the party must also comply with the requirements of Rule IV(E) below.

**E.    Requests for Adjournment of Court Appearances (Including Telephone Conferences).**  A request for an adjournment of a court appearance shall be made as soon as a party is aware of the need for the adjournment and, in any event, <u>no later than two business days prior to the scheduled appearance</u>, absent an emergency.  Requests should be made in writing in accordance with Rule I(A) above.  The request must state:  (1) the date of the scheduled appearance, (2) the length of time requested for the adjournment and suggested dates on which all parties are available (civil conferences are typically held on Thursday mornings), (3) the reason for the requested adjournment, (4) whether the adversary consents, and, if not, the reasons given by the adversary for refusing to consent.  The appearance is not adjourned unless counsel are thereafter informed – typically by the posting of a signed order on ECF – that the written application has been granted.

## II.    <u>SEALING REQUESTS</u>

**A.    <u>Sealing/Redactions Not Requiring Court Approval</u>.**  Federal Rule of Civil Procedure 5.2 describes sensitive information that must be redacted from public court filings without seeking prior permission from the Court.  Such sensitive information includes:  Social Security numbers; names of minor children; dates of birth; and financial account numbers.

Other information that should be treated with caution and may warrant a motion for approval of sealed or redacted filing includes: personal identifying numbers (PIN  numbers); medical records, treatment and diagnosis; employment history; individual financial information; proprietary or trade secret information; home addresses; and information regarding an individual's cooperation with the government.

Sensitive information and information requiring caution must not be included in any document filed with the Court unless such inclusion is necessary and relevant to the case.  If such information must be included, personal identifiers must be partially redacted in accordance with the above-cited rules and policies in order to protect any privacy interest.

**B.    <u>Sealing/Redaction Requiring Court Approval</u>.**  Motions or Letter Motions for approval of sealed or redacted filings in civil and miscellaneous cases and the subject documents, including the proposed sealed document(s), must be filed electronically through the court's ECF system in conformity with the court's standing order, 19-mc-00583, and <u>ECF Rules & Instructions, section 6</u>.

The motion must be filed in public view, must explain the particular reasons for seeking to file that information under seal and should not include confidential information sought to be filed under seal.  Supporting papers must be separately filed electronically and may be filed under seal or redacted only to the extent necessary to safeguard information sought to be filed under seal.

The proposed sealed document must be contemporaneously filed under seal in the ECF system and electronically related to the motion.  The summary docket text, but not the sealed document, will be open to public inspection and should not include confidential information sought to be filed under seal.

Where the motion seeks approval to redact information from a document that is to be publicly filed, the filing party shall: (a) publicly file the document with the proposed redactions, and (b) electronically file under seal a copy of the unredacted document with the redactions highlighted.  Both documents must be electronically filed through the ECF system and related to the motion.

To be approved, any redaction or sealing of a court filing must be narrowly tailored to serve whatever purpose justifies the redaction or sealing and must be otherwise consistent with the presumption in favor of public access to judicial documents.  See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006).  In general, the parties' consent or the fact that information is subject to a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial documents.  See, e.g., In re Gen. Motors LLC Ignition Switch Litig., No. 14-MD-2543(JMF), 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015).

The party seeking leave to file sealed or redacted materials should meet and confer with any opposing parties (or third parties seeking confidential treatment of the information, if any) in advance to narrow the scope of the request.  When a party seeks leave to file sealed or redacted materials on the ground that an opposing party or third party has requested it, that party shall notify the opposing party or third party that it must file, within three days, a letter explaining the need to seal or redact the materials.

Any party unable to comply with the requirement for electronic filing under seal through the ECF system, or who has reason to believe that a particular document  should  not  be electronically filed, must move for leave of the Court to file in the  traditional manner, on paper.

## III.    MEDICAL AUTHORIZATIONS

In any case involving allegations of personal injury – whether physical, psychological, emotional or otherwise – the plaintiff is to provide to the defendant all necessary medical authorizations within 10 days after an answer or other responsive pleading is filed.

## IV.    MOTIONS

A.    **Pre-Motion Conferences in Civil Cases.**  Pre-motion conferences are required for the following motions:  discovery motions, motions to amend pleadings, motions to file a third party complaint, motions for sanctions, transfer motions, summary judgment motions, Fed. R. Civ. P. 12 motions, Fed. R. Civ. P. 21 motions, and Fed. R. Civ. P. 42 motions.  Pre-motion conferences are not otherwise required.  To request a pre-motion conference, send the Court a letter of no more than 5 pages, describing the grounds for the proposed motion and whether the

motion is on consent of all parties.  If the motion is not on consent, any opposing party should submit a letter setting forth its position, of no more than 5 pages, within 3 business days after the request is made.  All pre-motion letters should be filed in accordance with Rule I(A) above.  The submission of a pre-motion letter does not stay any future deadlines, except that submission of a pre-motion letter concerning a motion to dismiss will stay the defendant's time to answer or otherwise move with respect to the complaint.  **A pre-motion conference is not required in pro se cases.**

        **B.**     **Memoranda of Law.**  Unless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 double-spaced pages, and reply memoranda are limited to 10 double-spaced pages.  Memoranda of 10 pages or more shall contain a table of contents and a table of authorities.  Both the text and footnotes must be in 12-point font.

        **C.**     **Filing of Motion Papers ("Bundling Rule").**  In all cases (except pro se cases), the moving party shall electronically file motion and reply papers on ECF only when the entire motion has been briefed.  The responding party shall electronically file opposition papers only when noticed by the moving party that the motion and reply papers are being filed.  Parties shall send one courtesy copy of any submission to Chambers at the time they are electronically filed.  See Rule VI below regarding courtesy copies.  Motions for reconsideration and motions in limine are not subject to the "bundling rule."

                **1.**     **Exception to the "Bundling Rule"**  Upon notice to the court, a party may file a motion before briefing is completed if waiting to file until the motion is fully briefed could result in the loss of a right (such as by making it impossible to file a timely appeal).  Nothing in these Individual Practices supersedes a specific time period for filing a motion specified by statute or Federal Rule – including but not limited to Fed. R. Civ. P. 50, 52, 54, 59, and 60, and Fed. R. App. P. 4 – where failure to comply with the specified time period could result in forfeiture of a substantive right.

        **D.**     **Oral Argument on Motions.**  Parties may request oral argument by letter at the time their moving, opposition, or reply papers are filed.  Requests shall be filed in accordance with Rule I(A) above.  The Court will determine whether argument will be heard and, if so, will advise counsel of the argument date.

        **E.**     **Discovery Disputes.**  Unless otherwise directed, counsel should describe their discovery disputes in a single letter, jointly composed.  Strict adherence to Fed. R. Civ. P. 37(a)(1), the "meet and confer" rule, is required, and should be described in the joint submission as to time, place, and duration, naming the counsel involved in the discussion.  The joint letter shall describe concisely the issues in dispute and the respective position of each party, with citations for supporting authority.  Letters regarding discovery disputes should be filed in accordance with Rule I(A) above.  Where a formal discovery motion is necessary, follow Local Civil Rule 37.2.

 **F.** <u>**Protective Orders.**</u> Parties who wish to obtain a protective order shall consult the Court's Model Protective Order, which is available on the Court's website (https://nysd.uscourts.gov/hon-paul-g-gardephe). The proposed protective order should be filed on ECF as an attachment to a cover letter in accordance with Rule I(A) above, and with Rule 18 of the Southern District of New York Electronic Case Filing Rules & Instructions, which is available at https://nysd.uscourts.gov. If the protective order proposed by the parties deviates from the Court's Model Protective Order, a blackline showing all deviations shall be provided as a separate exhibit.

 **G.** <u>**Approval of FLSA Settlements.**</u> Parties seeking judicial approval of a Fair Labor Standards Act ("FLSA") settlement shall submit a letter to the Court (1) explaining why the proposed settlement reflects a reasonable compromise of disputed issues, rather than a mere waiver of statutory rights, and (2) presenting the Court with sufficient evidence to determine whether the settlement represents a fair and reasonable resolution of the disputes. <u>See</u> <u>Mosquera v. Masada Auto Sales, Ltd.</u>, No. 09-CV-4925 (NGG), 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011). The Court will not approve an FLSA settlement without an explanation from counsel as to why the proposed settlement is fair and reasonable.

 **H.** <u>**Failure of the Court to Schedule Argument or Decide a Motion.**</u> If a motion is not decided within 120 days of the time it is fully submitted or of argument, counsel for the movant shall submit a letter to call this fact to the Court's attention.

## V. <u>SUMMARY JUDGMENT MOTIONS</u>

 **A.** Any party filing a motion for summary judgment (or partial summary judgment) shall submit with that motion a Local Civil Rule 56.1 Statement. Each numbered paragraph in the Rule 56.1 Statement must contain only one factual assertion. Each factual assertion must be followed by a supporting citation to the record, for example, "Ms. Jones visited Dallas, Texas on July 10, 1989. Smith Aff. ¶ 3; Hays Dep. Tr. 25:7-8."

 **B.** The party opposing the motion must submit a response to the moving party's 56.1 Statement. The response must contain numbered paragraphs tracking those in the movant's 56.1 Statement, and must state in each paragraph specifically what is admitted and what is disputed, and the basis for any dispute, citing specific portions of the evidentiary record relied upon. Lack of relevance is not a valid reason for refusing to agree that a fact is not in dispute. Each assertion must be a factual assertion, not a legal assertion. Responsive 56.1 Statements must respond to all the allegations of the opponent's 56.1 Statement, and may go on to make additional factual allegations in paragraphs numbered consecutively to those of the moving party (<u>i.e.</u>, do not begin re-numbering at 1). If additional factual allegations are made, the opponent must file a responsive 56.1 Statement of its own.

 **C.** All record authority cited in a 56.1 Statement, such as affidavits, relevant deposition testimony, responses to discovery requests, or other documents containing such evidence, shall be separately filed and served as an appendix to the 56.1 Statement. Each appendix shall include a table of contents, and the relevant record authority shall be submitted in the form of sequentially numbered exhibits.

**D.**    If multiple parties are submitting 56.1 Statements, they must coordinate their statements to provide for consecutive, non-overlapping, numbered paragraphs in their respective statements.

## VI.    <u>COURTESY COPIES</u>

**A.**    <u>**ECF-Filed Documents Over Five Pages**</u>.  One courtesy copy of any document filed on ECF <u>**longer than five pages**</u> should be sent to Chambers.  Courtesy copies of documents filed on ECF should:  (1) be single-sided; (2) be spiral bound or stapled (preferred over velo bound copies); and (3) bear the ECF header (<u>e.g.</u>, "Case 1:13-cv-01234-PGG Document 100 Filed 09/3/13 Page 1 of 10").

**B.**    <u>**Delivery Method**</u>.  Courtesy copies should be sent via mail or hand delivery.  Do not send courtesy copies via multiple delivery methods.

**C.**    <u>**Pleadings**</u>.  Courtesy copies of pleadings, marked as such, shall be submitted to chambers as soon as practical after filing.  (Please refer to Rules 14 and 18 of the Southern District of New York Electronic Case Filing Rules & Instructions, available at https://nysd.uscourts.gov, for more information about filing pleadings.)  Copies of initial pleadings should be sent to Chambers no later than seven business days before the parties' initial conference.  (<u>See</u> Rule VII(B) below.)  Courtesy copies of amended pleadings should be accompanied by a blackline showing all changes from the previously filed pleading.

**D.**    <u>**Motion Papers**</u>.  <u>One set</u> of courtesy copies of all motion papers, marked as such, shall be submitted to chambers at the time the papers are electronically filed.

**E.**    <u>**Joint Pretrial Order**</u>.  <u>One set</u> of courtesy copies of the joint pretrial order <u>and all documents filed or served with the pretrial order</u> should be submitted to Chambers on the date of filing or service.  Refer to Rule X below.

## VII.    <u>CONFERENCES</u>

**A.**    <u>**Principal Trial Counsel**</u>.  The attorney who will serve as principal trial counsel must appear at all conferences with the Court.

**B.**    <u>**Initial Case Management Conference**</u>.  The Court will generally schedule a Fed. R. Civ. P. 16(c) conference approximately 60 days following the filing of a Complaint.  An ECF notification will be sent to plaintiff's counsel (or defendant's counsel in a case removed from state court), who will be responsible for distributing copies to all parties.  As further instructed in the Notice, the parties shall submit a joint letter and proposed case management plan seven days before the initial conference.  Please refer to the Model Case Management Plan available on the Court's website (https://nysd.uscourts.gov/hon-paul-g-gardephe).  The parties' joint letter should be filed on ECF in accordance with Rule I(A) above, with the proposed case management plan filed as an attachment.  Courtesy copies of the pleadings should be delivered to Chambers in accordance with Rule VI above.  **Please do not send courtesy copies of the joint letter and**

**proposed case management plan.**  Counsel are required to register for electronic filing and file a notice of appearance before the initial pretrial conference.  Please consult the Southern District of New York Electronic Case Filing Rules & Instructions, available at https://nysd.uscourts.gov, for more information.

## VIII.    APPLICATIONS FOR ENTRY OF DEFAULT JUDGMENT

A party who wishes to obtain a default judgment must proceed by way of an order to show cause and use the procedure set forth in Attachment A.

## IX.    BANKRUPTCY APPEALS

The attention of all counsel is directed to Rules 8016 through 8018 of the Federal Bankruptcy Rules, which provide the dates within which briefs are to be served and filed. Counsel may extend these dates by stipulation submitted to the Court no later than two business days before the brief is due.

## X.    PRETRIAL PROCEDURES

**A.    Joint Pretrial Orders in Civil Cases.**  Unless otherwise ordered by the Court, within 30 days from the date for the completion of discovery in a civil case or, if a dispositive motion has been filed, within 30 days of a decision resolving the motion, the parties shall submit to the Court for its approval a joint pretrial order setting forth the information required by Fed. R. Civ. P. 26(a)(3) and the following:

**1.**    The full caption of the action.

**2.**    The names, addresses (including firm names), and telephone numbers of trial counsel.

**3.**    A brief statement by plaintiff as to the basis for subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction.  Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.

**4.**    A brief summary by each party of the claims and defenses that party has asserted which remain to be tried, without recital of evidentiary matter but including citations to all statutes relied on.  Such summaries shall identify all claims and defenses previously asserted that are not to be tried.

**5.**    With respect to each claim remaining to be tried, a statement listing each element or category of damages sought with respect to such claim and a calculation of the amount of damages sought with respect to such element or category.

**6.**    A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed.

7

**7.**    A statement as to whether or not all parties have consented to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).

**8.**    Any stipulations or agreed statements of fact or law that have been agreed to by all parties.

**9.**    A statement by each party as to the witnesses whose testimony is to be offered in its case in chief, indicating whether such witnesses will testify in person or by deposition.  A party may not call as a witness an individual who is not listed in its portion of the witness list.

**10.**    A designation by each party of deposition testimony to be offered in its case in chief, referencing page and line numbers, with any cross-designations and objections by any other party.  If there is no objection or cross-designation, the Court will deem the opposing party to have waived any such objection or cross-designation.  A party may not offer deposition testimony that is not listed in its portion of the designation.

**11.**    A list by each party of exhibits to be offered in its case in chief.  The opposing party must indicate what exhibits it objects to and the nature of the objection (*e.g.*, "authenticity," "hearsay," "Rule 403").  Any objection not listed shall be deemed waived. A party may not offer an exhibit that is not listed in its portion of the exhibit list.  A copy of each hard copy exhibit should be appended to the motion.

**B.**    <u>**Filings Prior to Trial in Civil *Jury* Cases**</u>.  Unless otherwise ordered by the Court, in <u>jury cases</u>, the following shall be filed <u>on the docket</u> with the proposed joint pretrial order:

**1.**    All parties must jointly prepare:  a list of voir dire questions to be asked of prospective jurors; requests to charge; and a proposed verdict sheet.  To the extent a party objects to another party's requested voir dire questions, requests to charge or proposed verdict sheet, that party should (a) set forth the grounds for that objection (or refer to the trial memorandum of law for a full discussion of the objection) and (b) propose an alternative.  <u>All requests to charge, all objections and all alternative proposals must include citation to supporting authority.</u>

**2.**    Each party must also file a trial memorandum of law addressing each issue of law that the party expects to arise at or before trial.

**3.**    Each party must also file <u>one</u> set of the party's documentary exhibits organized sequentially.

**4.**    If the documents described in (1) through (3) above are prepared on a computer, electronic copies must also be submitted on a thumb drive.

    **C.**    <u>**Filings Prior to Trial in Civil *Non-Jury* Cases**</u>.  Unless otherwise ordered by the Court, in <u>non-jury cases</u>, each party shall file the following with the proposed joint pretrial order:

    **1.**    Proposed findings of fact and conclusions of law.

    **2.**    A trial memorandum of law that identifies the issues, summarizes the relevant facts and applicable law, and addresses any evidentiary issues.

    **3.**    Affidavits constituting the direct testimony of each trial witness, except for testimony of an adverse party, a person whose attendance must be compelled by subpoena, or a person for whom a party has requested and the Court has agreed to hear direct testimony during trial.  Three business days after submission of such affidavits, counsel for each party shall submit a list of all affiants whom he or she intends to cross-examine at the trial.  Only those witnesses who will be cross-examined need appear at trial.  The original affidavits will be marked as exhibits at trial.

    **4.**    Copies of any designated deposition testimony that will be offered as substantive evidence, along with a one-page synopsis (with page references) of those excerpts for each deposition.

    **5.**    <u>One</u> set of the party's documentary exhibits organized sequentially.

    **6.**    If the documents described in subsections (1) through (5) above are prepared on a computer, electronic copies must also be submitted on a thumb drive.

    **D.**    <u>**Filings Prior to Trial in *All* Civil Cases**</u>.

    **1.**    Each party must file and serve all motions <u>in</u> <u>limine</u> with the proposed joint pretrial order.

    **2.**    Within two weeks of filing the proposed joint pretrial order, each party must file and serve its opposition to any motion <u>in</u> <u>limine</u>.

    **E.**    <u>**Final Pretrial Conference**</u>.  The Court will schedule a pretrial conference approximately one week before trial.  The Court will use the occasion to explore the prospects for settlement.  Counsel must be prepared to engage in meaningful settlement discussions.

## ATTACHMENT A: DEFAULT JUDGMENT PROCEDURE

1.   Prepare a Proposed Order to Show Cause for default judgment and make the Order returnable before Judge Gardephe in Courtroom 705 of the United States Courthouse, 40 Foley Square.  Leave blank the date and time of the hearing and the deadline for service, which Judge Gardephe will set when he signs the Order.

2.   Electronically file on ECF, as separate ECF filing events, the following support papers with the Proposed Order to Show Cause:

     a.   An attorney's affidavit setting forth:

          i.    why a default judgment is appropriate, including a description of the method and date of service of the original summons and complaint;

          ii.   whether, if the default is applicable to fewer than all of the defendants, the Court may appropriately order a default judgment on the issue of damages prior to resolution of the entire action;

          iii.  the proposed damages and the basis for each element of damages including interest, attorneys' fees, and costs; and

          iv.   legal authority for why an inquest would be unnecessary.

     b.   A proposed default judgment.

     c.   Copies of all the pleadings.

     d.   A copy of the affidavit of service of the original summons and complaint.

     e.   If failure to answer is the basis for the default, a Certificate from the Clerk of the Court stating that no answer has been filed.

     f.   Be sure to include the attorney's name and contact information.

3.   Once electronically filed, a courtesy copy of the Proposed Order to Show Cause and the supporting documentation must be provided to Chambers via fax or in hard copy.

4.   After the Judge signs the Order, Chambers staff will file it on ECF.

5.   The movant will serve one copy of the Order and supporting documents on the adverse party.

6.   Prior to the return date, file via ECF an affidavit of service, demonstrating that the adverse party was served with the Order to Show Cause and supporting papers.  Bring a courtesy copy of this affidavit to the hearing.